## Catherine A. Putnam v. Jeffrey S. Putnam, Sr.

[689 A.2d 446]

No. 95-535

Present: **Allen, C.J., Dooley, Morse and Johnson, JJ., and Mandeville, D.J. (Ret.), Specially Assigned**

Opinion Filed December 20, 1996

*Gwendolyn W. Harris* of *Kiewel & Harris, P.C.*, Brattleboro, for Plaintiff-Appellee.

*David A. Gibson*, Brattleboro, for Defendant-Appellant.

**Allen, C.J.** Defendant husband appeals from a final order of the Windham Family Court in a divorce action in which the court awarded legal rights and responsibilities for the parties' minor child to plaintiff wife. Husband claims that the court erred by (1) striking the final stipulation of the parties in which they agreed, with court approval, to joint legal responsibility for their child and payment of $7500 from husband to wife; (2) denying his motion for appointment of an attorney to represent the interests of the child; (3) awarding wife sole legal and physical responsibility for the child; and (4) awarding $12,000 to wife as her share of the equity in the marital home. We affirm.

Husband and wife married in 1987 and had a son in 1991. Since 1994 husband has been employed by the buildings department of a college. Prior to that date he worked for a plumbing service. Wife has been employed as a school bus driver since 1990. According to the trial court, the marriage was "characterized by a high degree of criticism and intolerance" with husband often degrading wife's performance as a wife and mother. Although husband was not regularly physically abusive toward wife, the court found that in spring of 1993, he "became violently angry over being refused sex . . . [and] kicked her repeatedly until she was forced to leave their bed and bedroom." It also found that, "[i]n a manner which [wife] took as serious, [husband] has indicated that he has felt angry enough to kill her."

Prior to the bedroom incident the couple discussed divorce but decided to stay together for their son. Husband also made it clear that he would fight wife for custody if she insisted on a separation. After the incident, however, wife began to spend a substantial amount of time away from the marital home. On several occasions she stayed out late or did not return home, spending some time with a male companion. During these periods, husband cared for the child. Wife arranged to be home when husband was not present and while at home she cared for the child.

In 1992 husband's parents gave the parties the house in which they had been living since 1987. In fall of 1993 husband and wife negotiated a $40,000 mortgage on the home. The purpose of the financing was, in part, to provide wife with money to buy her own residence. Husband gave wife $1700 from the mortgage proceeds when the parties separated in October 1993.

When wife left, husband did not allow her to take the child, who was almost two years old. From October 1993 to the filing of the divorce action by wife in February 1994, the child resided primarily with

husband. Prior to their separation, both parents had shared responsibility for their son, although wife was principally responsible for his day-to-day care and, as the trial court found, almost entirely responsible for his medical care.

On the same day that wife commenced this action for divorce, the court issued a final order of relief from abuse, finding that husband had physically abused wife during an altercation concerning parent-child contact. The court also decreed shared custody of the parties' son with exchanges of the child to be conducted through wife's adult daughter. Following several modifications and an uncontested hearing, the parties signed a final stipulation on September 12, 1994. The agreement called for joint legal responsibility and a continuation of the schedule set forth in previous temporary orders. The stipulation also required husband to pay wife $7500 for her interest in the marital residence.

The court approved the final stipulation on September 13 and directed counsel to prepare a written order. On September 26, wife, through her new attorney, moved to strike the stipulation, arguing that she had entered into the agreement under duress. Wife also moved for appointment of a guardian ad litem (GAL). The court appointed a GAL and issued an order of divorce reserving for further hearing the issues of parental rights and responsibilities and property distribution. The court set aside the final stipulation on March 2, 1995. It found that wife signed the stipulation while under duress and described the agreement as a fraud upon the court involving collusion between the parties. Husband then moved for appointment of an attorney to represent the child, which the court denied.

After a hearing on the merits, the court decreed sole legal and physical responsibility for the child to wife, subject to husband's right to parent-child contact. The court also valued the parties' equity in the residence at $35,000 and awarded wife $12,000 as her share.

■ On appeal, husband first contends that the court erred in striking the final stipulation of the parties because there is no evidence of duress, collusion, or fraud. He maintains that "[t]here may well have been pressure, as there is in every contested suit, to bring matters to a close," but such pressure is not sufficient to justify the setting aside of the stipulation. Wife argues that the evidence was

sufficient to support the court's findings and its order striking the final stipulation.[1]

Although we agree with husband that "this Court should reinforce the policy that settlement agreements between parties are to be promoted and should be enforced," we also note that the policy favors *"voluntary* settlement of marital disputes." *Bendekgey v. Bendekgey*, 154 Vt. 193, 197, 576 A.2d 433, 435 (1990) (emphasis added). A court-approved, property distribution agreement can be set aside if there is a showing of "fraud, unconscionable advantage, impossibility of performance, hampering circumstances beyond the expectation of the parties, collusion, or duress." *Burr v. Burr*, 148 Vt. 207, 209, 531 A.2d 915, 917 (1987). Agreements concerning parental rights and responsibilities that have received court approval can be set aside if similar findings are made. See V.R.F.P. 4(a)(1) (Vermont Rules of Civil Procedure apply to divorce proceedings); V.R.C.P. 60(b) (court may relieve party from final order because of mistake, inadvertance, excusable neglect, newly discovered evidence, fraud, etc.). They may also be set aside if a "real, substantial and unanticipated change of circumstances" has occurred and modification is in the best interests of the child. 15 V.S.A. § 668. The court in the present case found that duress, collusion, and a fraud upon the court were all present when the parties signed the final stipulation. Because we hold that the evidence was sufficient to support the court's finding of duress and that the court did not abuse its discretion in setting aside the stipulation, we do not address the findings of collusion and fraud.

At the hearing on the motion to set aside the stipulated order, wife's former attorney testified that based on his observations of wife and his conversations with her, husband "was the boss and she had to do things the way and at the time that he requested that they be done or

---

[1] Wife also argues that husband's appeal of the March 2, 1995 order striking the stipulation is untimely. She contends that the court's decision constitutes a final order and husband should have appealed within thirty days of the order. See V.R.A.P. 4; 12 V.S.A. § 2383.

"To be final and appealable an order must end litigation on the merits or conclusively determine the rights of the parties, leaving '"nothing for the court to do but execute the judgment."'" *In re Burlington Bagel Bakery, Inc.*, 150 Vt. 20, 21, 549 A.2d 1044, 1045 (1988) (quoting *Nagle v. Lee*, 807 F.2d 435, 438 (5th Cir. 1987) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945))). After the court set aside the parties' final stipulation, the issues of parental rights and responsibilities and property distribution remained for further consideration. The court's order, therefore, was not final, and husband's appeal, filed within thirty days of the September 15, 1995 order awarding parental rights and responsibilities and $7500 to wife, was timely.

demanded that they be done." He further testified that wife "was always . . . concerned about what [husband] would do or wouldn't do if she took a particular position." He observed that wife feared her husband and that fear never subsided during his representation of her. He also testified that she was "tired of fighting . . . battles every time she wanted to see her son" and "she had reached the end of her rope." He acknowledged that in many divorce cases there comes a time when the parties are "emotionally spent" and need to put the divorce behind them, but that the extent and degree of wife's emotional exhaustion was more severe than in most cases.

Under the parties' temporary agreements wife and husband shared legal and physical responsibility for the child. This was implemented through a complicated schedule of visitation. Wife testified that the parties originally followed the arrangement but stopped doing so because it was not in the child's best interest. She explained that her son "was a mess. He was sick all the time. He was having spiked fevers. He . . . just could not handle going back and forth. He could not handle the two separate schedules . . . ." She testified that she tried seeing a counselor to find out what would be best for the child. She also tried talking to her husband about the situation, but these attempts were futile because "[h]e said there was no problem." Because "nothing worked," she "gave up" and "backed away" from the child. To provide her son with more stability, she told husband that she would see the child only occasionally.

At the hearing prior to the court's approval of the stipulation, wife testified that the parties were not following the temporary, joint custody agreement because it was not in the child's best interest. She also stated, however, that she agreed with the final stipulation and that the parties would follow it, even though it too required shared custody. When questioned at the hearing to determine whether the stipulation should be set aside, she testified that she did not express her disagreement with the stipulation because she was afraid of what would happen to her if she fought for sole custody. She feared that if she made husband angry, he would cause her bodily harm or use the child to punish her, as he had in the past. Because she was too afraid to express her real opinion, she was hoping the court would realize that there was something wrong as the parents were signing an agreement that they had not been following. She testified that she "felt [she] had no other choices. Everything was just falling apart. Nobody was listening."

■ We agree with husband that parties are often under pressure in contested divorces and normally pressure alone is not sufficient to overturn a court-approved agreement of the parties. There are situations, however, where the normal boundaries of negotiation and compromise are exceeded and the court is justified in refusing to honor such agreements. See *Burr*, 148 Vt. at 209, 531 A.2d at 917 (setting aside court-approved stipulation because of substantial pressure placed upon parties by court). The testimony indicates that wife feared that husband would harm her if she expressed a view contrary to his. Prior to the stipulation, husband physically abused wife on two occasions, emotionally abused her regularly, and threatened her. In addition, there was testimony as to wife's mental exhaustion and sense of hopelessness from repeatedly attempting to cooperate with husband to no avail. We hold that the totality of circumstances in this case, as demonstrated by the evidence, show that wife entered into the final stipulation while under duress and that the trial court did not err in setting aside the stipulation.

Husband next argues that the court erred in denying his motion for appointment of counsel to represent the child because "the situation and the widely diverse positions of the parties" necessitated legal representation. He maintains that whether the court was correct in finding collusion, "the fact that it was so observed . . . is an indication that the lower court believed that neither parent was thinking foremost of what was in the best interests of their son." Wife responds that there was no need for an attorney because the court appointed a GAL and there was no indication that the GAL could not adequately represent the child's interests.[2]

V.R.F.P. 7 governs representation of minors by attorneys and GALs in divorce and separation proceedings. Appointment of counsel is within the trial court's discretion. V.R.F.P. 7(b); see also 15 V.S.A. § 594(a) ("The court *may* appoint an attorney to represent the interest of a minor or dependent child with respect to child support and the allocation of parental rights and responsibilities.") (emphasis added). This is in contrast to V.R.F.P. 6, which governs representation of minors in proceedings involving juvenile court and involuntary guardianships. Appointment of an attorney is mandatory under Rule 6(b). The difference stems from the state's role under each rule. In Rule 6 proceedings the state and minor child are adversaries, and

---

[2] Wife also argues that husband's appeal of the denial of his motion for appointment of counsel is untimely. We disagree for reasons previously noted.

assignment of counsel "is critical to maintaining a fair balance between the state and the individual." Reporter's Notes, V.R.F.P. 6. Under Rule 7, the state's "interest is principally to protect the best interests of nonparties - the children." Reporter's Notes, V.R.F.P. 7. Thus counsel is generally not assigned because "[t]he focus is almost exclusively on best interests rather than on rights." Reporter's Notes, V.R.F.P. 7. The best interests of a minor in Rule 7 proceedings may be adequately protected by a GAL, who "act[s] as an independent parental advisor and advocate whose goal [is] to safeguard the child's best interest." V.R.F.P. 7(d).

■ Husband has not demonstrated that the court abused its discretion in declining to appoint counsel for the child. Without determining whether the court was correct in finding collusion, we note that the assumption that neither parent was thinking of the best interests of their son does not necessarily follow from such a finding. Furthermore, regardless of whether the child was foremost in the parties' thoughts, the court appointed a GAL to protect the child's best interests, and husband does not show that the GAL failed to protect those interests.

Husband's third claim of error is that the court should not have awarded wife sole legal and physical responsibility for the child. In support, he argues that (1) during the first year and a half both parties cared for the child, but during the next year and a half husband was the primary care provider; (2) wife "deliberately failed to care for or nurture [the child] for the full amount of time allotted to her"; (3) the court gave too much weight to the testimony of a clinical psychologist who recommended that wife provide primary care for the child, and not enough weight to the testimony of a day care provider who testified that husband acts like a loving father who knows his child's needs; and (4) the court ignored *Harris v. Harris*, 162 Vt. 174, 647 A.2d 309 (1994), in which custody was awarded to the father, who, husband claims, had become the primary care provider.

■ Orders of the court concerning parental rights and responsibilities are governed by 15 V.S.A. § 665. That section directs the court to consider the best interests of the child and at least nine factors in making its determination. *Id.* § 665(b)(1)-(9). The court must "make findings on as many of those factors as the evidence will support." *Bissonette v. Gambrel*, 152 Vt. 67, 69, 564 A.2d 600, 601 (1989). It has broad discretion in awarding custody, *Nickerson v. Nickerson*, 158 Vt. 85, 88, 605 A.2d 1331, 1333 (1992), and its findings

will not be overturned unless clearly erroneous. V.R.C.P. 52(a)(2).

Although the court in the present case observed that "[e]ach parent has demonstrated a significant capacity to provide [the child] with love and affection," it found several factors that favor wife and none that favor husband. It concluded that wife is better able to provide the child with guidance, meet his present and future developmental needs, and apply a perspective in tune with the child's needs. See 15 V.S.A. § 665(b)(1), (3), (5). As the court found, these conclusions are supported by the manner in which wife handled the child's inability to adapt to shared custody. "Believing that an equal sharing of time was not in [the child's] best interest, and finding [husband] unresponsive to any proposal for lessening his periods of responsibility for the child, [wife] unilaterally decreased her time, hoping to provide [the child] with a more stable schedule."

█ The court also found that wife is the primary care provider. See *id.* § 665(b)(6). The court acknowledged that husband had had more responsibility for the child since spring of 1993, yet it emphasized "the significantly greater role played by" wife from the child's birth to the point of marital crisis. It also found that before and after the parties' separation, wife exercised exclusive responsibility for the child's medical care. These findings are sufficiently supported by the record. We therefore reject husband's argument that in determining which parent is the primary care provider, his time with the child after the separation outweighs the role wife played, and continues to play, in the child's life.

██ Regarding husband's other arguments, we agree that wife intentionally declined to maximize the time allotted to her by the temporary custody agreements. As the court observed, however, wife did not fully exercise her rights because of the negative effect shared custody was having on the child. We will not penalize wife for placing the mental and physical health of her child above her own self-interest. Next, we find no error with the court's weighing of the testimony of the psychiatrist and day care provider. "We have consistently held that '"[w]hen the evidence is conflicting the credibility of the witnesses, the weight of the evidence, and its persuasive effect are questions for the trier of fact, and its determination must stand if supported by credible evidence . . . ."'" *Nurenberg v. Corey*, 145 Vt. 341, 343, 488 A.2d 440, 441 (1985) (quoting *LaFlamme v. Church*, 143 Vt. 219, 220, 465 A.2d 268, 269 (1983) (quoting *Concra Corp. v. Andrus*, 141 Vt. 169, 173, 446 A.2d 363, 365 (1982))). The court

was well within its discretion in emphasizing the testimony of the psychiatrist over the testimony of the day care provider. We also do not agree that the court ignored *Harris*, 162 Vt. at 174, 647 A.2d at 309. Contrary to husband's belief, the court did not find that the father in *Harris* had become the primary care provider. Instead, the court specifically held that the mother was the primary care provider but that the child had a stronger relationship with the father and would thrive in his custody. *Id.* at 177-79, 181, 647 A.2d at 312, 314. This wide discrepancy between the child's relationship with one parent and his relationship with the other is not present in this case; as the court observed, the child "has a strong and caring bond with each [parent]." We see no inconsistency between *Harris* and the trial court's order in the present case.

In addition, husband seems to imply that the court awarded custody to wife simply because of gender, an action that is prohibited by 15 V.S.A. § 665(c). Husband does not cite anything in the record to support his theory and we likewise do not find any statements by the court to substantiate his argument. We hold that the court did not act contrary to the mandate of § 665(c) in awarding sole legal and physical responsibility to wife.

Finally, husband contends that the court improperly awarded wife $12,000 as her share of the equity in the marital home. He explains that the parties originally agreed to $5000 but that he "yielded" to wife by consenting to $7500. According to husband, the court should have awarded wife only $7500, the amount set forth in the final stipulation. Next, husband argues that the motion to vacate the stipulation pertained only to the issue of parental rights and responsibilities because wife stated that property distribution was not a factor in her decision to file the motion. Finally, husband maintains that the short duration of the marriage, the source of the gift of the property, and the receipt by wife of a portion of the mortgage proceeds and other personal property should have led the court to find that an award of $7500 was fair and reasonable.

■ The distribution of property in divorce proceedings is governed by 15 V.S.A. § 751. Under § 751, the court is required to consider all relevant factors, twelve of which are listed. *Id.* § 751(b)(1)-(12). The court has broad discretion in determining property dispositions. *Williams v. Williams*, 158 Vt. 574, 577, 613 A.2d 200, 202 (1992).

■ We disagree that wife's motion to strike the final stipulation concerned only the provisions relating to custody. The motion specif-

ically requested the court to vacate the agreement "in its entirety." In addition, at the hearing on the motion the court explained that its new "order deals with the property and the parental rights and responsibilities." The court thus struck the entire stipulation. We also disagree with husband's characterization of the statements wife made at the hearing. Wife did not say that property distribution was not a factor in her decision to file the motion. Instead, she stated that she did not care about the money. She merely expressed a sentiment that the custody of her son was her foremost concern. We also note that husband's "yielding" to a request for an amount that the court later found to be inadequate does not prove that wife voluntarily signed the agreement. The court therefore did not err in vacating the entire stipulation.

 In examining the statutory factors, the court acknowledged that the marital home was given to the parties by husband's parents. Because of the short duration of the marriage, it inferred that the intention of the parents was to benefit their son. Yet it also found that the contributions of each party to the marital estate were essentially equivalent. It found that the parties had already divided the personal property and, as far as the testimony indicated, each received property of nearly equivalent value. The court then awarded the marital home to husband and ordered him to pay wife a sum equal to only one third of the equity in the property. We find no abuse of discretion and hold that the court did not err in making its property disposition.

*Affirmed.*