2008 VT 80

**Roger LANOUE d/b/a RL Marine, Inc. v. RUTLAND RENOVATIONS c/o Jonathan Blake**

[959 A.2d 556]

No. 06-378

---

¶ 1. June 10, 2008. Roger Lanoue appeals from a Grand Isle Superior Court judgment ordering that bail monies Lanoue remitted to the Grand Isle Small Claims Court be released to Rutland Renovations in satisfaction of a small claims judgment. Because Lanoue's appeal to this Court is untimely, we dismiss it.

¶ 2. The relevant facts are as follows. In July 2003, Lanoue filed suit against Rutland Renovations in small claims court. Shortly thereafter, Rutland Renovations filed a counterclaim. In January 2004, the small claims court entered judgment for Rutland Renovations in the amount of $3,025 ($3,000 in damages and $25 in costs) due to Lanoue's failure to appear at trial. Lanoue's subsequent appeal to the superior court was dismissed due to his failure to appear at trial or to

state a reason for appeal. That dismissal ended litigation on the merits. By August 2005, Lanoue still had not satisfied the judgment despite a financial disclosure hearing in the small claims court and a subsequent March 2005 ruling that he had the ability to pay the judgment. On August 24, 2005, the small claims court held Lanoue in contempt of court and ordered him to pay the judgment immediately, which now totaled $3,599.75 including interest and costs. The small claims court ruled that if the judgment remained unpaid on August 26, the court would issue an arrest warrant and set bail at $1,500. Lanoue failed to pay, and on August 26, he was arrested and posted $1,500 in cash bail.

¶ 3. At a September 1 hearing on purge of contempt, the small claims court held that Lanoue continued to be in contempt of the January 2004 judgment order, authorized disbursement of the $1,500 bail to Rutland Renovations to be applied against the outstanding judgment, and ordered Lanoue to pay the balance of the judgment immediately. The court ruled that Lanoue's failure to pay the outstanding balance of $2,099.75 by September 10 would result in a second arrest warrant being issued with bail set at $2,099.75. Lanoue again failed to pay. On September 12, Lanoue was arrested and posted $2,099.75 in cash bail.

¶ 4. On September 13, the small claims court received a letter from Rutland Renovations requesting the release of all $3,599.75 in bail funds to it in satisfaction of the judgment. On that day, Lanoue also filed a motion to withhold the funds. On October 5, the small claims court denied Lanoue's motion, and, treating Rutland Renovation's letter as a motion, granted its request to release the bail funds. Lanoue timely appealed the small claims court's October 5 rulings to the superior court.

¶ 5. On April 28, 2006, a hearing was held in superior court. On May 13, the superior court entered judgment for Rutland Renovations, ordering that $1,500 be released to it immediately due to Lanoue's failure to timely appeal the September 1, 2005 order, and that $2,099.75 be released to Rutland Renovations "when the case is final." In material part, the judgment order read as follows:

> The $1,500.00 bail fund shall be disbursed forthwith to defendant Rutland Renovations in accord with the September 1, 2005 order which was not appealed. The balance of the fund which was purge payment shall be paid to Rutland Renovations when the case is final. The orders and rulings of the court are affirmed. The findings of this court on the record of April 28, 2006 are incorporated herein.[1]

---

[1] We disagree with the dissent that the May 13 judgment order was not a final, appealable order. We read the phrase "when the *case* is final" as a directive not to release the $2,099.75 until the appeal period had run — or until a favorable decision on appeal had been entered — not as an indication that the *order* was not meant to be final. This reading is consistent with the sentence preceding it, which orders the *immediate* release of the $1,500 pursuant to the small claims judgment of September 1, 2005 that was never appealed. When added to the court's apparent confusion as to why the case was still open as of the August 18 show-cause hearing — and the fact that no further business was conducted by the court at that hearing other than the order that the funds be immediately released and that a to-be-agreed-upon sum of costs and interest be paid in $50 installments — it is a fair inference that the fact that there were proceedings at all in August was the result of a failure — of unknown cause —

At an August 18 show-cause hearing, the court ordered the immediate release of the $2,099.75 to Rutland Renovations pursuant to the May 13 judgment. The court ordered Lanoue to pay the balance of the outstanding judgment (consisting of additional interest and costs), subject to confirmation by the parties of the amount owed, at the rate of $50 per month. The $2,099.75 was immediately released to Rutland Renovations. By August 23, the parties had agreed that the additional interest and costs totaled $383.12. On August 25, the superior court ordered Lanoue to pay the additional $383.12 to Rutland Renovations in monthly installments of $50. Lanoue filed a motion in the superior court for permission to appeal to this Court on August 29. We subsequently granted Lanoue permission to appeal.[2]

---

to release the $2,099.75 when the appeal period had run.

Neither can we find any support in the record for the dissent's assertion that "[t]here was no entry of this 'judgment' as required by Rule 58." *Post*, ¶ 16. The docket entries, and the signed "Judgment Order on Appeal," indicate that the judgment was entered consistent with that rule. See *Baker v. Town of Goshen*, 169 Vt. 145, 150, 730 A.2d 592, 596 (1999) (holding that Rule 58 requires court to sign a written judgment order, without which docket entry of court's decision will not constitute entry of judgment or commence running of appeal period).

[2] On September 5, the superior court granted Lanoue's motion for permission to appeal instead of forwarding it to this Court for review. On September 20, we dismissed Lanoue's appeal because only this Court, and not the superior court, may grant permission to appeal a superior court judgment in a small claims action. See 12 V.S.A. § 5538; V.R.A.P. 6(b) (requiring parties to file requests for permission to appeal superior court decisions

¶ 6. Lanoue makes three arguments on appeal. First, Lanoue argues that the superior court lacked jurisdiction to hear his appeal. Lanoue also argues that his wife should have been given notice and an opportunity to defend her interest in the bail monies before they were released to Rutland Renovations. Finally, Lanoue argues that it was improper for the small claims and superior courts to disburse bail monies in satisfaction of the small claims judgment.

¶ 7. We do not reach any of Lanoue's arguments because his motion for permission to appeal was untimely. Appeals of superior court judgments in small claims actions are governed by 12 V.S.A. § 5538 and Vermont Rule of Appellate Procedure 6(b). Under those provisions, requests for permission to appeal such judgments must be filed with the superior court "within 10 days of the date of the entry of the judgment or order to be appealed from" with exceptions not relevant to this case. V.R.A.P. 6(b). The superior court entered judgment for Rutland Renovations on May 13, 2006. That order ended litigation on the merits of the contempt charge and conclusively determined the rights of the parties, leaving nothing for the court to do but execute the judgment, see *Putnam v. Putnam*, 166 Vt. 108, 113 n.1, 689 A.2d 446, 448 n.1 (1996) (setting out rule that such orders are final and appealable), which it did by ordering the immediate release of the $2,099.75 to Rutland Renovations and by ordering Lanoue to pay Rutland Renovations $383.12 in interest and costs. Lanoue did not file a motion for permission to appeal until August 29, 2006, more than three months after the May 13 judg-

---

in small claims matters in the superior court for forwarding to this Court for decision). We ordered that Lanoue file a request to appeal with this Court within seven days. Lanoue filed the request on September 27, and we granted it.

ment order, and as such waived his right to request permission to appeal. See *Dowlings, Inc. v. Mayo*, 137 Vt. 548, 550, 409 A.2d 588, 590 (1979) (holding that failure to timely file an appeal constitutes a waiver of appeal rights). Therefore, we must dismiss the appeal. Cf. *Bowles v. Russell*, 551 U.S. 205, 209, 127 S. Ct. 2360, 2363 (2007) ("[T]he taking of an appeal within the prescribed time is mandatory and jurisdictional." (quotation omitted)).

*Dismissed.*

¶ 8. **Dooley, J.,** dissenting. The majority decision pretends that a troubling change of policy is, in fact, a routine application of settled law. We have never before held that an appeal from the final judgment comes too late only because there was an earlier order giving partial relief. The lesson of this case is that litigants must appeal early and often to be sure they preserve issues on appeal — exactly the wrong message for this Court to be sending.

¶ 9. The majority concludes that Lanoue's claim was untimely insofar as it was filed more than ten days after the order being appealed was issued. Because I do not agree that the record supports this reading, I dissent from its conclusion that the appeal was untimely and would affirm on the merits.

¶ 10. The majority finds that the Grand Isle Superior Court entered a final appealable judgment on May 13, 2006, when it made an order that the $2099.75 in issue be released to Rutland Renovations "when the case is final." The majority reaches this conclusion even though the "order" in question accomplished nothing directly and was followed by further hearings, including one on August 18, 2006 that required the release of the money "as soon as possible" and another on August 25, 2006 that concluded the matter. The majority's ruling is irreconcilable with our law on when judgments become final for purposes of appeal and will lead to

piecemeal appeals — exactly what our rules are intended to avoid.

¶ 11. Vermont Rule of Appellate Procedure 6(b), which governs the timeliness of appeals in small claims cases, requires that an appeal be filed "within 10 days of the date of entry of the judgment or order to be appealed from." See also V.R.A.P. 4. In this case, Lanoue appealed either from the order of August 18 that released the money or the final judgment order of August 25, 2006 that included the bail provision, a payment schedule, and an additional $383.12 required payment. It is undisputed that Lanoue appealed within ten days of either of these orders.

¶ 12. With only limited exceptions, we consider appeals only from final judgments. See *Bloomberg v. Edlund Co.*, 151 Vt. 559, 560, 563 A.2d 995, 996 (1989); *Hospitality Inns v. South Burlington R.I.*, 149 Vt. 653, 656, 547 A.2d 1355, 1358 (1988) (stating that "a final judgment is a prerequisite to appellate jurisdiction unless the narrow circumstances authorizing an interlocutory appeal are present"). Thus, we have a strong policy against piecemeal appeals.

¶ 13. This case, at its most simple, involves a business dispute about a boat lift and some docking that Lanoue sold to Rutland Renovations. While Lanoue sued in order to obtain an amount equal to the price of these items, Rutland Renovations prevailed on a counterclaim for nondelivery of the items and obtained a judgment. The bail issue before us is collateral to the underlying litigation for which the August 25 order was undeniably the final judgment. The August 25 decision specified the amount owed by the debtor, and how it was to be paid, including the distribution of the bail order.

¶ 14. Given that the August 25 order is undeniably a final judgment, the first question — unanswered by the majority — is how Lanoue can appeal the May 13 order if it is not the final judgment in this case. This is, of course, only a preliminary

question, because it does not follow that Lanoue must appeal if he can do so, a point discussed below. Specifying how Lanoue can appeal the May 13 order, however, goes a long way in revealing the problems with the majority's decision.

¶ 15. There are two possible answers to the question of the appealability of the May 13 order. The first and narrowest reason is that the May 13 order is itself a final judgment on one of the claims in the case — that Lanoue should be held in contempt for failing to pay the small claims judgment. Apparently, the majority has adopted this theory. The first problem with this theory is that the May order was, by its terms, not intended to be final. It specified one of the terms of the final judgment order in the case, but not all of them, and specifically left for the future a final judgment order.[3] While the court could have ordered the immediate payment of the bail amount, as the court eventually did on August 18, the court chose not to do so, leaving that action to the August order. Thus, Rutland Renovations took nothing from the May order until the court issued the August order, directing the payment of the bail amount.

¶ 16. The majority uses the test of *Putnam v. Putnam*, 166 Vt. 108, 113 n.1, 689 A.2d 446, 448 n.1 (1996), to determine finality — whether there is nothing left to do but to execute the judgment. Here "execute" means enforce. Black's Law Dictionary 609 (8th ed. 2004). Normally, enforcement of a money judgment is done by writ of execution. V.R.C.P. 69. The court could not enforce the May 13 order, prior to the issuance of a final judgment,

because the rule explicitly says so.[4] There was no entry of this "judgment" as required by Rule 58. Moreover, if the court can execute this order prior to final judgment, the court can execute any order that gives partial relief, essentially reading the limitation of Rule 54(b), as I explain below, out of the rules.

¶ 17. It is no answer to say, as the majority does, that the August orders are orders of execution. They are no more orders of execution than they are any other kind of judgment order. Calling preliminary orders judgment orders and final judgments orders of execution muddies the water when the courts apply the many procedural rules with time limits linked to the entry of judgment. See, e.g., V.R.C.P. 59(b) (motion for new trial to be filed no later than ten days after "entry of the judgment"); V.R.C.P. 59(e) (motion to alter or amend a judgment must be filed within the same time limit).

¶ 18. The majority has adopted an extremely creative interpretation of the May order in order to hold that Lanoue had to appeal from it. See *ante*, ¶ 5 n.1. According to the majority, the trial judge meant that the case would be final only when the period for appeal had expired. Of course, if one accepts that view of finality in every case, it would be wholly unnecessary for the court to condition its order on finality at all. Indeed, since there must be a final judgment in order for the aggrieved party to appeal, finality cannot refer to the result of the appeal but must refer instead to the judgment that is appealed.

¶ 19. The majority supports its creative interpretation by looking to the action of

---

[3] This point distinguishes an adjudication that the debtor is in contempt for nonpayment of the judgment. Such an order is final because only execution by imprisonment or like remedy is left. See *Hale v. Peddle*, 156 Vt. 275, 277, 590 A.2d 899, 900 (1991).

[4] Moreover, saying that the May 13 order ended the contempt phase of this litigation is wishful thinking. There is no indication in the record before us that Lanoue complied with the provisions of the August 25 order requiring him to pay an additional $383.12 in monthly installments of $50.

the trial court three months later, and two months after Lanoue is supposed to have appealed. Even if one ignores these short-comings, I cannot agree with the majority's reading of the court's actions. The "confusion" of the trial court was not about the terms of the May order, but instead about why the term on later finality was included. Obviously, the clerk did not believe that the May order was a final judgment and did not, therefore, release the bail funds. The "confusion" and "unknown cause," *ante*, ¶ 5 n.1, described by the majority are, in reality, descriptions of the actions of the clerk and trial judge who read the order according to its terms.

¶ 20. This misreading is not without consequences to Lanoue, who is prejudiced because he could not do what seems to be impossible — predict that an order designated not "final" would later be found to be so. In my judgment, without the benefit of hindsight, no party could have predicted that an appeal from the May order would be necessary. It is unjust to ask Lanoue to predict that this Court would adopt such a troubling interpretation of finality.

¶ 21. And even if the May 13 order did not specify that it would not become effective until a final order issued, the result would be the same as a result of Vermont Rule of Civil Procedure 54(b). Rule 54(b) provides that, when an order addresses only some of the issues in a case, a judgment as to those issues is final only if the court finds that there is no just reason for delay. If the court wanted to treat its May order as a final appealable judgment, the court needed to comply with Rule 54(b) and make the findings specified in that rule. In the absence of such findings, "any order . . . which adjudicates fewer than all the claims . . . *shall not terminate the action as to any of the claims or parties*, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims." *Id.* (emphasis

added). Rule 54(b) applies here and controls the question before us.

¶ 22. The situation in this case is very similar to that in *In re Newton Enterprises*, 167 Vt. 459, 462, 708 A.2d 914, 916 (1998), in which a town brought a zoning-enforcement action against a business, alleging that the landowner's multiple uses on the lot violated the zoning ordinance, and seeking an injunction and civil penalties. The trial court denied the town an injunction, but did not resolve the request for civil penalties, and the town appealed. We found the appeal premature:

> We note, at the outset, that this issue involves part of the relief requested in the enforcement action and that the enforcement action is still pending before the environmental court on the Town's request for civil penalties. Thus, there is not yet a final judgment in the enforcement action; nor has the environmental court made the determination required by V.R.C.P. 54(b). Accordingly, we do not have jurisdiction to consider the appeal of the denial of the injunction.

*Id.* As in *Newton Enterprises*, the issue here involves remedies. And as in that case, the question is whether a party can appeal an order with respect to one remedy, when the extent of liability is undetermined and when other remedies may be employed once liability is determined. Just as the town could not have appealed when no final order had been reached in that case, Lanoue could not have appealed the May 13 order as a final order here.

¶ 23. This leads to the second alternative — that Lanoue could have appealed the May 13 order as an interlocutory or collateral final order. This approach is more in line with our precedents on appealability. In the course of any case, the

court is likely to make numerous interim orders governing issues like discovery, scheduling, evidentiary admissibility, and the like. Many such orders may be final with respect to the specific issue governed by the order. Despite this finality, we do not require, or even authorize, immediate appeal of these interim orders. Instead, we allow appeals in such instances only with permission and only under narrow standards of review. See generally V.R.A.P. 5(b) (interlocutory order appeals); V.R.A.P. 5.1(a) (collateral final order appeals).

¶ 24. I note that we have taken much of our jurisprudence on appellate jurisdiction from federal law. To the extent that Lanoue could appeal an order with respect to security under federal law, that appeal would fall under the collateral-order exception to the rule prohibiting appeal before final judgment. See generally *Swift & Co. Packers v. Compania Columbiana Del Caribe, S.A.*, 339 U.S. 684, 689 (1950). We have adopted the collateral-order exception, using a test for its applicability drawn from the federal cases. See V.R.A.P. 5.1(a); *State v. Lafayette*, 148 Vt. 288, 291, 532 A.2d 560, 561 (1987). The only difference between the collateral-order exception under Vermont and federal law is that the exception is discretionary under Vermont law, and a party must seek permission to take a collateral-order appeal; there is no appeal from a collateral order as a matter of right. See V.R.A.P. 5.1(a).

¶ 25. The issue before us is not whether a party can take a collateral-order appeal. Instead, the majority holds that the party must take such an appeal or lose the ability to attack the collateral order on appeal from final judgment. This is not the federal rule. The majority of federal jurisdictions have concluded that, "if it is possible to provide an effective remedy on appeal from the final judgment, review should be allowed." 15A C. Wright, A. Miller & E. Cooper, Federal Practice &

Procedure: Jurisdiction § 3911, at 359 (2d ed. 1992). The explanation for this approach has been stated as follows:

> Any rule that requires forfeiture of appellate opportunities for guessing wrong about doctrines of appealability that often are obscure would greatly increase the costs of collateral order doctrine by forcing protective appeals in many situations in which appealability is uncertain and in which all parties might prefer to await review on appeal from the final judgment. Forfeiture, moreover, would trap some parties in a box framed by a rule designed to alleviate untoward risks, not to create them. The system can live easily with a double opportunity for appeal. And in fact several courts of appeals have held explicitly, across a wide range of collateral order appeal circumstances, that failure to take an available collateral order appeal does not forfeit the right to review the order on appeal from a final judgment.

*Id.*; see also *Singleton v. Apfel*, 231 F.3d 853, 856-57 (11th Cir. 2000) (per curiam); *United States v. Michelle's Lounge*, 39 F.3d 684, 692 (7th Cir. 1994).

¶ 26. There is no reason for us to deviate from the federal rule in this case. The majority's decision creates just the sort of traps for the unwary and perverse incentives for unnecessary appeals that the federal courts have tried to avoid. Indeed, the majority decision makes it impossible to distinguish final orders from interlocutory ones, greatly increasing the obscurity of the rules. To add to the confusion, because collateral-order review is discretionary in Vermont, the majority holds that the failure to seek an appeal that might never have been granted constitutes a waiver of the right to appeal from

the final judgment.[5] In my view, the majority's decision is an irrational restriction on the right to seek review in this Court, and worse, it is an irrational restriction that will produce many unnecessary collateral-order appeal requests. Because I do not agree with such a result, I would hold that we have jurisdiction over this appeal.

¶ 27. This brings me to the merits. Let us recall that Lanoue was jailed for nonpayment of a small claims judgment. The time for appeal of the underlying judgment has long expired, and the court rejected an argument that Lanoue lacked the ability to pay. In the orders providing for Lanoue's imprisonment, however, the small claims court addressed the issue of bail. The first of these orders, issued on August 24, 2005, specified that the judgment amount of $3599.75 was to be paid by August 26, 2005 "or an arrest warrant will be issued in the amount of $1500.00 cash bail." The arrest warrant was served, and Lanoue posted the specified bail.

¶ 28. The second order, titled "Purge of Contempt," distributed the first bail amount to Rutland Renovations and provided for the issuance of another arrest warrant on September 10, with a new bail amount set at the then-remaining $2,099.75. Again, an arrest warrant issued, and Lanoue put up the required bail in order to avoid imprisonment. Lanoue appealed the bail-release order to the superior court and does so again here.

¶ 29. Lanoue's basic position is that bail functions to ensure that a defendant appears at court proceedings, and not to ensure that he or she pays the judgment debt. By extension, Lanoue reasons that, in this case, the court erred in giving the bail to Rutland Renovations. The problem with Lanoue's argument is that it ignores

the facts of this case. It is clear on the record that all proceedings were completed, and so there was no need to order bail to ensure that Lanoue would show up in court. Lanoue mentions that bail cannot be used to ensure payment of judgment debt, but the record shows that the court never used bail for this purpose.

¶ 30. Instead, the court's actions make it clear that the purpose of the bail was to serve as a purge amount, to satisfy the judgment in part, and to keep Lanoue out of jail. The order of September 1, 2005 is entitled "Purge of Contempt." That order distributed the first bail installment of $1,500, and Lanoue has not appealed that distribution. Perhaps the court used ambiguous terminology, but Lanoue was on notice that the court meant bail to be the amount that he would have to post to purge the contempt and that the purge amount would be distributed to Rutland Renovations. Lanoue again posted bail, in the amount in issue here, with full awareness of its purpose and effect.

¶ 31. The court's terminology may be ambiguous, but neither its rhetoric nor its reasoning is wrong. Although the statutes on bail in civil actions have largely been repealed, see 1971, No. 185 (Adj. Sess.), § 237, the concept of bail in civil actions was well understood in our law, both in statute and in the common law. *Mason v. Carr*, 118 Vt. 467, 469, 114 A.2d 417, 419 (1955). In civil cases, bail could be a surety that was exclusively conditioned on the principal appearing in court, · or it could secure the payment of a judgment. See *id.* Thus, we recognized the concept of "civil bail," that is, a "bond or deposit of money given to secure the release of a person arrested for failing to pay a court-ordered civil debt." Black's Law Dictionary 150 (8th ed. 2004). "The bail is conditioned on the payment of the debt." *Id.* As the Florida Supreme Court noted, "[t]he object of bail in civil cases is either directly or indirectly to secure the payment of a debt or other civil duty . . . ."

---

[5] It is particularly irrational in a small claims appeal, where review by this Court is discretionary in the first instance. See 12 V.S.A. § 5538.

*Varholy v. Sweat*, 15 So. 2d 267, 270 (1943) (citation omitted).

¶ 32. It is clear that the small claims judge was using the term "bail" in the second sense, to mean money filed in court to secure payment of the debt. Lanoue was fully aware of the court's intent when he put up the bail in issue. Under these circumstances, I see no error in distributing the bail to Rutland Renovations.

¶ 33. In sum, because Lanoue's appeal was not untimely, I would reach the merits of his claim and affirm.