# Deborah A. Hubbell (Gault) v. Steven R. Hubbell

[702 A.2d 129]

No. 96-192

Present: Gibson, Dooley, Morse and Johnson, JJ., and Allen, C.J. (Ret.),
Specially Assigned

Opinion Filed September 19, 1997

*Richard V. Aborjaily,* Norwich, and *Joanne M. Ertel* of *Black, Black & Davis,* White River Junction, for Plaintiff-Appellant.

*William C. Dagger,* Woodstock, for Defendant-Appellee.

**Allen, C.J. (Ret.),** Specially Assigned. Mother appeals an order of the Windsor Family Court awarding parental rights and responsibilities of the parties' minor child to father. Mother argues that (1) the court erred in awarding custody to father because mother demonstrated a greater capacity to promote a positive relationship between the child and the other parent than did father; (2) the record does not support the court's finding that mother was responsible for the child's lack of stimulation; (3) the court did not give adequate weight to mother's role as the child's primary caregiver; (4) mother was prejudiced by the delay between the final hearing and the custody decision; and (5) the court erroneously applied a preference for father over mother because of the sex of the child. Father cross-appeals the award of attorney's fees. We agree that the court erred by considering the sex of the child and remand for reconsideration of parental rights and responsibilities without regard to this factor. In all other respects, the decision is affirmed.

Mother filed for divorce in 1994 and sought custody of the parties' son, who was two-and-a-half years old. About a month later father obtained an ex parte relief-from-abuse order, based on alleged acts of inappropriate discipline of the child. The order granted father temporary possession of the parties' residence and temporary custody of the child.

The parties agreed to a custodial evaluation by a child psychiatrist, who examined both the allegations of abuse and the respective parenting skills of the parties. The psychiatrist stated that he could not find clinical evidence of physical abuse, but recommended that custody be awarded to father. The court found that mother was the primary care provider prior to the separation and that father was the primary care provider thereafter. Based on the court's evaluation of the parties' skills as parents and the record of the child's progress in father's custody, the court ruled that "[t]he credible evidence preponderates in favor of maintenance of [the child's] custodial placement with [father], with liberal visitation opportunities for [mother]." The court awarded the marital residence to father, subject to its indebt-

edness, and ordered father to pay $5000 of mother's attorney's fees. Mother appeals, and father cross-appeals the award of attorney's fees.

Mother first argues that the court erred in awarding custody of the parties' son to father because she demonstrated the greater "ability and disposition . . . to foster a positive relationship and frequent and continuing contact with the other parent." See 15 V.S.A. § 665(b)(5). Regarding § 665(b)(5), the court concluded "that *neither* party has demonstrated much ability or willingness to foster a positive relationship between the child and the other parent." In support of this conclusion the court found that the parties had maintained a "state of hypervigilance" that resulted in "a substantial negative influence upon the parties' abilities to even attempt to work together to address the child's needs" and that "the parties are unable to engage in even the most basic discussion, compromise, or agreement as to matters affecting the child." The findings include specific instances of conduct by each party supporting the position that neither is able to foster a positive relationship and continuing contact with the other parent. The psychiatrist noted that the parties clearly demonstrated an inability to communicate and make joint decisions about the child and thus an inability to collaborate in raising their son. The record supports the findings, and the findings support the conclusion that neither party appears able to foster a positive relationship between the child and the other parent.

Mother next argues that the court erred by finding that she was responsible for the child's lack of stimulation and that awarding her custody would result in under-stimulation. This contention mischaracterizes the court's findings. The court found that the child was under-stimulated while the parties lived together, with mother as the primary caretaker and father largely detached from parenting. It also found that awarding custody to mother might create "the *possibility* of a return to under-stimulation in the home." (Emphasis added.) Mother's contention also ignores the testimony of the psychiatrist. In his evaluation, the psychiatrist stated that mother was the primary caretaker while the parties lived together, that the child did not receive sufficient stimulation to overcome his language delay and social immaturity, and that one disadvantage of awarding custody to mother was the possibility that the child would be under-stimulated in the home environment. The court's findings are therefore amply supported.

■ ■ Mother contends that she should be awarded parental rights and responsibilities because she was the primary caretaker for most of the child's life. We have held that this criterion should be given great weight unless the primary custodian is unfit, but it does not create a presumption that the primary caretaker should be awarded custody. See *Nickerson v. Nickerson*, 158 Vt. 85, 89, 605 A.2d 1331, 1333 (1992); *Harris v. Harris*, 149 Vt. 410, 418, 546 A.2d 208, 214 (1988). The court found that mother was the primary caregiver, but went on to examine the quality of care provided by each parent at all relevant periods of the child's life. It weighed the factors in father's favor more heavily, including his successful completion of a parenting course; his provision of suitable and adequate nutrition, clothing, cleanliness, and other physical and emotional care for the child; and his dedication to his son's need for consistency, structure, intellectual stimulation, and continuity of environment. The trial court has wide discretion in custody matters, and we must affirm the custody decision when it examines the attributes of each parent in light of the factors enumerated in 15 V.S.A. § 665(b). See *Johnson v. Johnson*, 163 Vt. 491, 496, 659 A.2d 1149, 1152 (1995).

■ Mother also claims that she was prejudiced by the delay between the final hearing and the rendering of the custody decision, suggesting that the court's extensive quotations from exhibits evidences a lack of memory of the testimony. The findings and conclusions were lengthy, detailed, and comprehensive, and the claimed effect of the delay is purely speculative.

■ Mother next argues that the court erred in finding that one advantage of awarding custody to father would be "primary caretaking by a parent of the same sex, with positive gender identification consequences." Mother contends that this finding is inconsistent with 15 V.S.A. § 665(c), which states that "[t]he court shall not apply a preference for one parent over the other because of the sex of the child, the sex of a parent or the financial resources of a parent." We agree that the court referred to the same-sex factor as an advantage to the child of remaining with his father and improperly weighed that factor in arriving at its decision. Consequently, we must remand to the trial court to reconsider the custody issue without regard to the sex of the child or the parents. See *Harris v. Harris*, 162 Vt. 174, 182, 647 A.2d 309, 314 (1994) (we would be compelled to reverse custody determination if trial court applied preference for father because child was a boy); see also *Gilbert v. Gilbert*, 163 Vt. 549, 556-57, 664

A.2d 239, 242-43 (1995) (report of guardian ad litem admitted in violation of V.R.F.P. 7(d) required reversal of custody determination because we could not be sure that report was not considered in custody decision).

Finally, father argues in his cross-appeal that although mother's attorney's fees were reasonable in relation to the services rendered, they were excessive as to him. He notes his $35,000 salary, his low net worth, and the burdens of maintaining the marital home and custody of the parties' child. Father has not demonstrated that the fee award is clearly erroneous. His distinction between the reasonableness of the fee in the abstract and the reasonableness of his paying it is not sustainable on this record, nor does the record support his argument that mother unduly prolonged the litigation. The custodial evaluation, which necessarily, but properly, added to the length and complexity of the case, was agreed to by the parties, and father cannot be heard to complain. Father's resources are ample to meet what is a modest attorney's fee obligation.

*Reversed and remanded for reconsideration of parental rights and responsibilities without regard to the sex of the child, an amended decision to be issued within thirty days of this opinion; affirmed in all other respects.*