### Deanna Payrits v. Scott Payrits

[757 A.2d 469]

No. 99-408

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed June 16, 2000

*Bryden F. Dow*, West Rutland, for Plaintiff-Appellant.

*Edward R. Seager, P.C.*, Rutland, for Defendant-Appellee.

**Amestoy, C.J.** Plaintiff-mother Deanna Payrits appeals a Rutland Family Court decision granting sole parental rights and responsibilities for their children to defendant-father Scott Payrits. Mother contends that the court erred by (1) finding that both parents have been primary care providers for their children; (2) failing to find that mother is the primary care provider and failing to conclude that the children should remain with mother absent a finding of the mother's unfitness; and (3) failing to find that other 15 V.S.A. § 665(b) factors either favored mother or were neutral. We affirm.

The family court found the following relevant facts. The parties were married in 1991. In 1992, they had a daughter. Between 1991 and 1994, the family moved several times. In 1994, they moved to Vermont, and a son was born shortly thereafter. The family lived with father's parents from 1994 to 1996. Throughout this time, father worked full-time and attended classes at a community college, while mother worked sporadically.

The marriage experienced problems in the summer of 1996. Mother filed for a separation and moved into an apartment. On September 4, 1996, the parties stipulated to a temporary order which provided that the parents would share both legal and physical parental rights and responsibilities, and that each would have equal time with the children.

In early 1997, the parties reconciled and moved in together. Mother worked part-time at a day care center, which the children attended. Father continued to work full-time, though he ceased attending classes, due in part to the demands of the household. In 1998, the family experienced some financial difficulties. Problems arose in the marriage again, due in part to mother's "socializing," which affected her ability to devote her attention to the children.

In July 1998, mother filed for divorce. Father moved out of the family apartment. Mother was fired from her job, and developed a relationship with another man. In September 1998, the parties again stipulated to shared legal parental rights and responsibilities. Mother was assigned sole physical rights and responsibilities, based on

father's work schedule. As a practical matter, the court found, each parent spent equal time with the children.

In the fall of 1998, mother moved without telling father. She transferred daughter to a new school and son to new day care provider without informing father.

The family court held divorce hearings over two days in the summer of 1999. The court found that both parents had provided primary care for the children since they were born and that the parties had shared equal time with the children from the September 4, 1996 stipulation until the time of its August 1999 final divorce order. It found that the children's schedule, with its frequent transfers between parents, was "hectic" and inconsistent with the regular, stable schedule they required. It considered the probable effects on the best interests of each child if custody were assigned to each parent.

The court also considered, as required, each of the nine factors set out in 15 V.S.A. § 665(b) ("In making an order under [§ 665], the court shall be guided by the best interests of the child, and shall consider at least the following factors[.]"). Although mother disputes this, the record is clear that the court found in favor of father in five of the factors (1-4, 7), in favor of neither party in three (5, 6, and 8), and that one factor did not apply (9).

Based on its findings, the court concluded that neither parent was unfit to raise the children, but that because shuttling the children between the households was not in the children's best interests, sole parental rights and responsibilities should belong to father:

> The factors as reviewed by the court show that between the two parties, [father] has a greater sense of stability, greater maturity, and a greater orientation toward the needs of the children. [Mother] is a loving parent, enjoys the children, but is not as able to provide a stable home environment for the children and is not as mature in her ability to communicate about the children and to put the children's needs first.

The court also emphasized that the children's relationship with father's extended family also strongly favored its decision. Mother now appeals, arguing that the family court's findings of fact and conclusions of law were erroneous.

■ Mother is misguided in contending that our standard of review is de novo. The family court has broad discretion in awarding custody,

and its findings will not be overturned unless clearly erroneous. See *Putnam v. Putnam*, 166 Vt. 108, 116-17, 689 A.2d 446, 451 (1996). "Given its unique position to assess the credibility of witnesses and weigh the evidence, we will not set aside the [family] court's findings if supported by the evidence, nor its conclusions if supported by the findings." *Begins v. Begins*, 168 Vt. 298, 301, 721 A.2d 469, 471 (1998) (citations omitted). In determining the best interests of the children in custody matters, the court may draw upon its own common sense and experience in reaching a reasoned judgment. See *Bissonette v. Gambrel*, 152 Vt. 67, 69-70, 564 A.2d 600, 601 (1989).

Mother first argues that the family court's findings regarding the children's primary care provider are clearly erroneous. See § 665(b)(6) (court shall consider "quality of the child's relationship with the primary care provider, if appropriate given the child's age and development"). The court found:

Both parents have provided primary care for the children continuously since they were born and continuously since 1996. This factor does not favor either parent, except as it relates to other factors, and [father] has been a more reliable provider of care to slight degree than [mother]; however, both have been primary care providers.

Mother contends that the court's primary care provider finding was not supported by reasonable and credible evidence. She argues that the court failed to make accurate findings covering all relevant periods of the children's lives and that father could not have been the primary care provider because of his busy schedule, which included full-time work and attending community college classes, while she worked only part-time or not at all.

Mother's argument that the family court failed to focus on all relevant periods of the children's lives rather than on the time immediately preceding trial is not persuasive. We observed in *Nickerson v. Nickerson*, 158 Vt. 85, 89, 605 A.2d 1331, 1333 (1992), that we "have not enunciated a definitive standard for determining the identity of the primary-care-provider under § 665(b)(6)." We cautioned that "mere physical custody by one of two fit parents, during the time the estranged spouses live 'apart' to satisfy the no-fault divorce requirements, should not in itself cause a former primary-care-provider to lose that status." *Id.*

Here, the court assessed the entire period of the children's lives and the provision of care to the children by the parties. Unlike

*Nickerson*, it does not appear that the court's evaluation of the § 665(b)(6) factor gave undue weight to the father's role by failing to weigh mother's care of the children. Mother's contention that she served as primary care provider was contested by father. There was conflicting testimony about who provided what care during which periods.

■ Where there is conflicting testimony on such a factual issue, "[w]e will not set aside a judgment solely because we would reach a different conclusion on the facts." *Price v. Price*, 149 Vt. 118, 120-21, 541 A.2d 79, 81 (1987). We have consistently held that in such situations the credibility of the witnesses, the weight of the evidence, and its persuasive effect are questions for the trier of fact, and its determination must stand if supported by credible evidence. See *Putnam*, 166 Vt. at 117, 689 A.2d at 451. We have never held, as mother essentially argues, that a court may not find that both parents qualify as the primary care provider or that neither parent so qualifies, and we decline mother's invitation to do so. See, e.g., *Harris v. Harris*, 162 Vt. 174, 176-79, 647 A.2d 309, 311-13 (1994) (implicitly rejecting mother's contention that the family court erred in finding that neither parent was the child's primary care provider). Given the court's oft-repeated finding that the parents spent approximately equal time with the children, its conclusion that both parents served as the primary care provider for the last three years was not clearly erroneous. See *id.* at 179, 647 A.2d at 313 ("Given these findings, which have support in the record, we conclude that the court's failure to identify the mother as the primary care provider does not require reversal.").

■ Mother next argues that since she should have been adjudged the primary care provider, she should have retained custody of the children unless the court found her unfit. Our above holding negates this claim, but we note that mother's argument is flawed because while a primary care provider finding is entitled to great weight, we have continually declined to adopt "a rule that the primary custodian will be awarded custody as long as the parent is fit." *Harris v. Harris*, 149 Vt. 410, 418, 546 A.2d 208, 214 (1988); see also *Hubbell v. Hubbell*, 167 Vt. 153, 156, 702 A.2d 129, 131 (1997) ("We have held that [primary care provider] criterion should be given great weight unless the primary custodian is unfit, but it does not create a presumption that the primary caretaker should be awarded custody."); *Harris*, 162 Vt. at 178, 647 A.2d at 312 (identification as primary care provider

only "one of the nonexclusive statutory factors the court must consider in making a custody award"). In fact, the weight to be accorded the primary-caregiver relationship must be based on the likely effect of a change of custodian on the child. See *Brennan v. Brennan*, 165 Vt. 525, 526, 685 A.2d 1104, 1105 (1996). "Only when there is no evidence of that effect should the court ordinarily find that the child must remain with the primary caregiver if fit." *deBeaumont v. Goodrich*, 162 Vt. 91, 101, 644 A.2d 843, 849 (1994).

Finally, mother argues that the family court erred in its assessment of factors § 665(b)(2) and (b)(4), and that "a de novo review shows that they favor [mother], while the other factors are essentially neutral." Mother's argument contains two flaws, each of which we noted earlier. First, mother again misapprehends our standard of review. Our review is not de novo; we will defer to the court's findings if supported by evidence. See *Begins*, 168 Vt. at 301, 721 A.2d at 471. Second, the contention that the court did not find for father in any of the remaining factors is not supported by the record.

Reviewing the court's finding on § 665(b)(4) (court shall consider "quality of the child's adjustment to the child's present housing, school and community and the potential effect of any change") under the appropriate standard, we are satisfied that there is sufficient evidence in the record to support the court's finding that "there is greater potential for future stability and security in [father's] household than in [mother's household]." Among the evidence the court cited to support this finding was the children's relations with father's extended family, their involvement in father's community's activities and church, and the stability of a long-term schooling plan in father's community.

Mother also challenges the court's findings on § 665(b)(2) (court shall consider "ability and disposition of each parent to assure that the child receives adequate food, clothing, medical care, other material needs and a safe environment"). While it is true, as mother contends, that the court considered an incident in which mother did not comply with a doctor's recommendation for follow-up minor medical care for her son's temporary illness, the court concluded that both mother and father were able to provide a safe environment for the children. Similarly, while the trial court observed that father had developed a stable earning capacity while mother had not, there is no indication in the record that this was a dispositive finding unfairly penalizing mother for the diminished earning capacity that may characterize a mother who undertakes parental responsibilities and part-time employment.

We have previously noted that a family court "is required under § 665(b) only to consider each factor listed when making a determination of parental rights and responsibilities — it imposes no specific requirement on how this consideration is to be manifested in the court's findings and conclusions." *Mansfield v. Mansfield*, 167 Vt. 606, 607, 708 A.2d 579, 581 (1998) (mem.). Here, the court carefully evaluated each of the § 665(b) factors. Indeed, in addition to the findings discussed above, the court specifically found either in father's or neither party's favor on the remaining factors.

Regarding § 665(b)(1) (court shall consider "the relationship of the child with each parent and the ability and disposition of each parent to provide the child with love, affection and guidance"), the court found that both parents were equal in their love and affection for the children, but that father was better able to provide guidance, citing his more stable living pattern and the fact that he initiated counseling for one of the children which proved beneficial. For § 665(b)(3) (court shall consider "the ability and disposition of each parent to meet the child's present and future developmental needs"), the court found that father had been more responsible in making the children's needs his priority, citing again his lead in arranging counseling for one of the children as well as adjusting his schedule around the children's needs, in contrast to mother's unilateral decisions regarding the children's living and education arrangements. The court found in favor of neither parent on the fifth factor of § 665(b) (court shall consider "the ability and disposition of each parent to foster a positive relationship and frequent and continuing contact with the other parent, including physical contact, except where contact will result in harm to the child or to a parent"), stating that both parties needed to improve at fostering a positive relationship with the other. On § 665(b)(7) (court shall consider "the relationship of the child with any other person who may significantly affect the child"), the court found in favor of father, relying primarily on the strong relationship the children have with father's large extended family. As to the eighth factor of § 665(b) (court shall consider "the ability and disposition of the parents to communicate, cooperate with each other and make joint decisions concerning the children where parental rights and responsibilities are to be shared or divided"), the court found that neither parent effectively communicated with the other about decisions regarding the children. Finally, the court found no facts suggesting abuse, so it found inapplicable § 665(b)(9) (court shall consider "evidence of abuse, as defined in section 1101 of this title, and the impact of the

abuse on the child and on the relationship between the child and the abusing parent").

Based on this record, mother's contention that the family court did not find for father in any of the remaining factors is not accurate. Thus, the court's conclusion that transferring custody to father was best for the children, even though mother had maintained physical custody of them prior to the final divorce order, was not clearly erroneous. See *Mansfield*, 167 Vt. at 607, 708 A.2d at 581 ("In this instance, the family court considered all nine factors in reaching its conclusion that the interests of the children would be best served if defendant was given legal and physical responsibility for them.").

*Affirmed.*