2004 VT 7

**Randy CHICK v. Melinda CHICK**

[844 A.2d 747]

No. 03-180

¶ 1. January 14, 2004. Defendant mother, Melinda Chick, appeals the decisions of the Windsor Family Court as-

---

[2] 32 V.S.A. § 3802(4) exempts from taxation "[r]eal and personal estate … used for public, pious or charitable uses."

suming jurisdiction over the parties' custody dispute and awarding plaintiff father, Randy Chick, primary parental rights and responsibilities with respect to the parties' two children. We conclude that the family court properly assumed jurisdiction of the custody dispute, and that mother has failed to demonstrate that the court abused its discretion in awarding father primary parental rights and responsibilities. Accordingly, we affirm the court's decisions.

¶ 2. Father, a lifelong Vermont resident, met mother, a lifelong North Carolina resident, in the spring of 1999 while he was stationed with the Marines in North Carolina. The parties married in September of that year. Father was twenty-one years old, and mother was nineteen years old. The parties' two children were born in North Carolina — a son on April 13, 2000 and a daughter on May 26, 2001. In August 2001, mother and the two children moved to Vermont to reside with father's parents to address the parties' worsening financial circumstances. For the time, father remained in North Carolina to perform his military duties. He returned to Vermont on leave in late 2001 and persuaded mother to return to North Carolina to work on their marriage. The parties decided that the children would remain in Vermont with father's grandparents for a couple of months until father's discharge from the Marines. After returning to North Carolina, the parties vacillated about whether to stay in North Carolina or return to Vermont. At one point, they thought they might try to make a go of it in North Carolina, and in January 2002, the children were sent there to join them. In the end, father concluded that the parties would not be able to afford to stay in North Carolina after his upcoming discharge from the Marines. Consequently, mother returned to Vermont with the children on February 18, 2002. Father joined them about a week later after he was discharged.

¶ 3. On July 1, 2002, mother took the parties' children to North Carolina without informing father. The following day, both father and mother filed complaints for custody in Vermont and North Carolina, respectively. On July 3, the Windsor Family Court issued an order asserting jurisdiction, granting father temporary custody of the children, and ordering mother to return the children to Vermont. On September 16, a North Carolina judge issued a temporary order preventing the removal of the children from North Carolina until October 7, when a hearing was scheduled to determine whether North Carolina should assume jurisdiction over the matter. On September 18, the Windsor Family Court held a hearing to address mother's motion to dismiss the Vermont divorce action and father's motion to enforce prior orders giving him temporary custody of the children. Mother failed to appear, and the court denied mother's motion to dismiss based on her default. The day after the hearing, the presiding Vermont judge held a telephonic conference with the North Carolina judge who had signed the September 16 order. The two judges concurred that Vermont appeared to be the more appropriate forum to resolve the custody dispute; however, the Vermont judge agreed not to issue an order regarding removal of the children from North Carolina until after the October 7 hearing in North Carolina. On September 24, the Windsor Family Court issued an order assuming jurisdiction over the parties' custody dispute based on its conclusions that (1) there was no grounds for North Carolina to assert emergency jurisdiction over the children; (2) Vermont is the children's home state; and (3) there is no reason for Vermont to decline jurisdiction. On October 11, the North Carolina court declined to assert jurisdiction over the matter. Shortly thereafter, the children were returned to Vermont.

¶ 4. On February 6, 2003, following a January 29 evidentiary hearing, the

Windsor Family Court issued an order granting father primary parental rights and responsibilities, with mother to have significant parent-child contact. Later, the court denied mother's motion to amend the judgment, as well as her motion to modify parental rights and responsibilities based on changed circumstances. Mother appeals the family court's assumption of jurisdiction and its custody decision, arguing that the court (1) erred in assuming jurisdiction over the parties' dispute; (2) abused its discretion in granting father primary parental rights and responsibilities; and (3) erred in denying mother's motion to amend its custody decision.

¶ 5. We first address mother's challenge to the family court's assumption of jurisdiction over the parties' dispute. According to mother, the court violated 15 V.S.A. § 1035(a) of the Uniform Child Custody Jurisdiction Act (UCCJA), 15 V.S.A. §§ 1031-1051, by assuming jurisdiction in its September 24, 2002 order even though there was a pending custody proceeding in North Carolina. We disagree. Subsection 1035(a) provides that a Vermont court may not exercise jurisdiction under the UCCJA

> if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

Subsections 1035(b) and (c) further provide that if the Vermont court has reason to believe, or is informed, that a custody proceeding is pending in another state, the Vermont court shall communicate with the appropriate court official or judge in the other state "to the end that the issues may be litigated in the more appropriate forum." *Id.* § 1035(c).

¶ 6. We find no violation of § 1035 of the UCCJA. Simultaneous proceedings were filed in Vermont and North Carolina, and the Vermont court asserted jurisdiction the following day. Upon learning of a potential jurisdictional conflict and inconsistent orders, the Vermont judge initiated a conference with the North Carolina judge, after which Vermont retained jurisdiction and North Carolina declined jurisdiction. In short, the courts proceeded properly under the statute.

¶ 7. Mother argues, however, that Vermont was not the home state of the children, notwithstanding the contrary conclusions of both the Vermont and North Carolina courts, because the children had not been living with a parent or person acting as a parent for six consecutive months before she took the children to North Carolina on July 2, 2002. See 15 V.S.A. § 1032(a)(1) (court in children's "home state" has jurisdiction to make custody determination); *id.* § 1031(5) ("Home state" means state in which child lived with parent or person acting as parent for six consecutive months); *id.* § 1031(9) ("Person acting as parent" means person other than parent who has physical custody of child and who has either been awarded custody by court order or claims right to custody). Mother acknowledges that the children had been in Vermont for most of the eleven months immediately prior to her taking the children to North Carolina, but she argues that there never was a consecutive six-month period in which the children were in Vermont with a parent or a person acting as a parent.

¶ 8. Mother's hypertechnical argument cannot defeat Vermont's assumption of jurisdiction in this case. There is support in the record for the family court's conclusion that the children's relatively brief stay in North Carolina in the beginning of 2001 was merely a temporary absence

from what had become their home state. In any event, without explicitly citing the relevant subsection in the UCCJA, both the Vermont and North Carolina judges essentially agreed that it was in the best interests of the children for Vermont to assume jurisdiction in this case because of the considerable amount of time that they had spent there during the previous year and the substantial evidence available in Vermont relevant to issues of custody. See 15 V.S.A. § 1032(a)(2) (court has jurisdiction over custody determination if it is in children's best interest that court assume jurisdiction because children and at least one contestant have significant connection with state and substantial evidence concerning children's care and personal relationships is available in state); see also *id.* § 1032(a)(4) (court has jurisdiction if another state has declined to exercise jurisdiction on the ground that this state is more appropriate forum to determine custody, and it is in children's best interest for this court to assume jurisdiction). Accordingly, mother's jurisdictional arguments are unavailing.

¶ 9. We now turn to the merits of the family court's custody decision. In making its custody determination, the court carefully examined each of the statutory factors set forth in 15 V.S.A. § 665(b). The court found that three of the factors favored awarding custody to father, while both parents fared equally with respect to the remaining applicable factors. According to the court, the most important of the factors favoring father was factor five — "the ability and disposition of each parent to foster a positive relationship and frequent and continuing contact with the other parent." 15 V.S.A. § 665(b)(5). In the court's view, father demonstrated a greater recognition and acceptance than mother of the children's need to have a significant relationship with each parent. The court noted that father and his parents fully supported the children's relationship with mother, and that father

was even willing to move back to North Carolina in the event mother was awarded primary custody of the children. On the other hand, the court stated that mother had demonstrated a lack of understanding and respect for the importance of father's role in the children's development by (1) taking the children to North Carolina without father's knowledge to enhance her chances of obtaining custody there; (2) proposing a limited visitation schedule for father in the event she obtained custody; and (3) suggesting that the children would be better off in daycare than with their father. The court also concluded that factor one favored father because, although mother plainly loved her children and they loved her, father had a greater disposition to provide the children with love and affection by spending more time with them. See *id.* § 665(b)(1) (ability and disposition of each parent to provide children with love, affection, and guidance). The court was careful to recognize mother's right to work, and her need to place the children in daycare, but felt that father was more disposed to provide the children the love and affection they needed. Finally, the court concluded that factor seven favored father because of the significant relationship that had developed between the children and the paternal grandparents, and because of the paternal grandparents' ongoing efforts to help the parties and support the children's relationship with both parties. See *id.* § 665(b)(7) (children's relationship with any other person who might significantly affect children).

¶ 10. Mother contends that, rather than considering the children's best interests, the family court punished her for taking the children to North Carolina without informing father. See *Price v. Price,* 149 Vt. 118, 121, 541 A.2d 79, 81 (1987) (custody determinations must be made on basis of children's best interest and not fault of parties). In her view, the court failed to appreciate her efforts to

keep the family together and the dilemma she faced at the time she took the children to North Carolina. She points out that she was the sole primary care giver early in the children's lives, and, at the time of the hearing, she had a far more stable work and home situation than father. She believes that an objective assessment of the statutory factors, without giving undue emphasis to her decision to remove the children to North Carolina, plainly supports awarding her primary parental rights and responsibilities. We disagree. "The family court has broad discretion in awarding custody, and its findings will not be overturned unless clearly erroneous." *Payrits v. Payrits*, 171 Vt. 50, 52-53, 757 A.2d 469, 472 (2000). We afford the trial court wide discretion in custody matters because only that court is in the "unique position to assess the credibility of witnesses and weigh the evidence." *Id.* at 53, 757 A.2d at 472. In assessing the credibility of witnesses and weighing the evidence, the court "may draw upon its own common sense and experience in reaching a reasoned judgment." *Id.* Here, mother essentially asks us to reweigh the evidence and exercise our own judgment to reverse the trial court. This we will not do. The issue is not whether we would have reached the same judgment as the trial court, but rather whether the evidence supports the court's findings and conclusions. Here, the court found that, considering all time periods of the marriage, the parties shared primary care of the children, and that, while many of the factors favored neither party, three of them favored awarding father primary rights and responsibilities. There is evidence in the record to support the family court's carefully explained and difficult decision.

¶ 11. Finally, mother argues that the family court erred by denying her motion to amend as untimely filed. We find no error. Although the court concluded that the motion was untimely filed, it also stated that, even assuming the motion was timely, the grounds raised by mother were insufficient to reopen the case or alter the court's judgment. In her motion to amend, mother submitted an affidavit from her North Carolina attorney suggesting that mother's move to North Carolina had not been planned for some time, as the court presumed. She also provided the court with information indicating that father was relocating to Connecticut along with his parents and was having problems disciplining the children. The court acted well within its discretion in determining that none of the information provided by mother undermined the basis of its decision or would cause the court to reconsider its decision.

*Affirmed.*