*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-024

MAY TERM, 2012

| | |
|---|---|
| In re M.A., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Chittenden Unit, |
| | } Family Division |
| | } |
| | } |
| | } DOCKET NO. 309-10-10 Cnjv |

Trial Judge: Alison Arms

In the above-entitled cause, the Clerk will enter:

Father appeals from a decision of the superior court, family division, terminating his parental rights to the minor M.A. Father contends the trial court's conclusion that he could not resume parental responsibilities within a reasonable period of time was factually and legally flawed. We affirm.

The material facts may be summarized as follows. M.A. was born on October 19, 2010 and taken into emergency DCF custody two days later based on mother's substance abuse issues and inability to care for the child. Father was incarcerated at the time on convictions of domestic abuse and escape, and remained incarcerated throughout these proceedings.

M.A. was adjudicated CHINS and placed with her paternal grandmother. About a month later, however, custody was re-transferred to DCF after mother removed the child without permission. In December 2010, the child was placed with a foster family, where she has since remained.

Mother initially participated in some services, but stopped in March 2011 and essentially abandoned the child. In August 2011, the State moved to terminate parental rights. An evidentiary hearing was held the following December. Although represented, mother failed to appear. Father appeared with counsel and testified on his own behalf. The court issued a written ruling in January 2012, granting the petition as to both parents. Only father has appealed.

The court found that father has an extensive criminal record, having been incarcerated for at least twelve of the last seventeen years on a variety of charges, including extortion, assault, and escape while on furlough. At the time of the hearing, his minimum release date was December 30, 2011, and his maximum was June 26, 2015. He had never met M.A. nor attempted to establish any contact with her of any kind. A DCF caseworker had attempted to contact him about the child, but he refused to speak with her. Father had four other children with different mothers, but had little contact with them, and had never parented them. He had completed cognitive self-change and domestic violence programs in prison, but the court found that he continued to minimize his offenses. Upon his release, father would be required to participate in domestic abuse programming for at least a year.

Father acknowledged that he could not meet M.A.'s needs when he was released from prison and that it could be a "lengthy process" to develop the stability and parenting skills necessary to care for the child. Indeed, the court noted that father had "no relationship" with M.A., had sent her no gifts or cards or demonstrated any love or affection for the child in any way, had refused contact with DCF, and had undertaken no parenting education. He had demonstrated no ability to recognize and respond to the child's physical and emotional needs, or to provide a safe, nurturing environment for the child. His limited participation in services, the court found, had little impact on the crucial issues relating to his ability to parent the child. It was thus clear, the court concluded, that father could not parent M.A. now or within a reasonable period of time, particularly in view of the child's need for stability and permanence. The court noted, as well, that M.A. had lived nearly her entire life with her foster family, where she was well loved and cared for, and had a secure and positive relationship with her foster parents and their older child. Accordingly, the court concluded that termination was in the best interests of the child. This appeal followed.

Father contends the trial court's conclusion that he could not resume parental responsibilities within a reasonable period of time was flawed both factually and legally. As for the facts, he asserts that two of the findings "underpinning" the ruling were erroneous. First, he cites the court's finding that, upon his conditional release from prison, father would have "limited contact with females and children." Father does not challenge the accuracy of the finding, but asserts that the court failed to acknowledge additional testimony that the restriction would not prevent him from having supervised visits with M.A.

The difficulty with the argument is that the court did not, as father claims, rely on the finding to show that it would prevent him from establishing a relationship with M.A. Rather, as discussed, the court's conclusion that father could not resume parental responsibilities within a reasonable period of time was based the absence of any relationship with the child or demonstrated interest in developing such a relationship, or in acquiring the skills and resources needed to provide a safe, stable, nurturing environment in which to raise her. Accordingly, we find no grounds to disturb the judgment on this basis. See In re G.F., 2007 VT 11, ¶ 15, 181 Vt. 503 (mem.) (reaffirming rule that a finding, even if erroneous, will not undermine a termination-of-parental-rights judgment where valid findings otherwise support the judgment).

Father also challenges the court's finding that "his indefinite employment prospects" rendered father's expectation of having a home within a month unrealistic. Father cites his own testimony that he had always been employed when he was not incarcerated, and a DOC caseworker's testimony that father would soon be a certified welder. Although the claim of error is questionable, since there was no evidence of any definite employment prospect upon father's release from incarceration, the finding again was marginal to the trial court's conclusion that he could not resume parental responsibilities within a reasonable period of time. Accordingly, we find no error warranting reversal.

Finally, father contends the court erred in concluding that it did not require expert testimony to recognize the "special and urgent need for permanence" for a child of M.A.'s young age. The contention is unpersuasive. We have recognized that, in determining the best interests of children, "the court may draw upon its own common sense and experience in reaching a reasoned judgment." Payrits v. Payrits, 171 Vt. 50, 53 (2000). The exceptional need to provide permanence and stability as early as possible in the lives of children is a priority that is generally recognized, and we discern no error in the court's ruling here that a reasonable time for father to demonstrate an interest and ability to parent had already passed in M.A.'s young life. See, e.g., In re W.L., 2009 VT 41, ¶ 16, 185 Vt. 641 (mem.) (affirming termination of

2

parental rights in part because the "the need for stability and permanence was particularly pronounced given W.L.'s young age").  Accordingly, we find no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice