*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-290

MARCH TERM, 2013

| | | |
|---|---|---|
| Rickey Thibodeau | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Windsor Unit, |
| v. | } | Family Division |
| | } | |
| | } | |
| Ashley Blanchard | } | DOCKET NO. 386-11-11 Wrdm |

Trial Judge: William D. Cohen

In the above-entitled cause, the Clerk will enter:

Mother appeals the court's decision granting parental rights and responsibilities of the parties' children to father. On appeal, mother argues that the court erred by altering an existing shared parenting arrangement and not considering splitting legal responsibilities. She also contends that the court abused its discretion in evaluating the statutory best-interests factors, especially as to the primary caregiver. We affirm.

The parties were in a long-term relationship, but never married. They are the parents of two children, born in October 2004 and July 2006. Following the parties' break-up in 2008, the parties shared custody of the children through an informal agreement. In this arrangement, the children switched households on Saturdays and Tuesdays or Wednesdays so that each parent had the children approximately 50% of the time.

In November 2011, father filed a parentage action. He alleged that mother had scheduled surgery for their daughter without his consent and was threatening to move their children from their current school to the school district where her home was located.

The court held a hearing on the motion at which both parties appeared pro se. Father testified that he lives in Norwich next door to his parents in the home where the children were born and the parties previously resided. Father's girlfriend and her two children also now live in the home. Since they became school-aged, the children have attended school in Norwich. Father expressed his desire for the children to spend time with their mother but also wanted the children to stay in their current school where he believed they were well adjusted. Father thought it was important for the children to remain in a stable environment and was concerned that mother would be unable to provide this stability because she had moved several times in the previous years. Father thought that another change in school would be particularly difficult for his son. At the hearing, father proposed that the children live with one parent through the school week and the other on weekends.

Mother acknowledged that she had moved several times after the parties' break up. She explained, however, that she was now in a stable situation after moving to Windsor eight months previously. She explained that she now has a home with bedrooms for the children and a yard. She expressed that she wanted to move the children to the Windsor school district. She initially requested a "Monday through Friday" schedule, but then said she would not support father's proposal that one parent have the children five days during the week if it meant that she would not see her children for the entire week.

The court examined the statutory factors and found that most of them favored neither parent. The court found that both parents were equally able to provide the children with love and affection; meet the children's physical and developmental needs; and foster a positive relationship with the other parent. See 15 V.S.A. § 665(b). The court found that the most significant factor was "the quality of the child's adjustment to the child's present housing, school and community and the potential effect of any change." Id. § 665(b)(4). On this point, the court found that mother had moved several times in the past years and that her current situation was fairly recent.[1] On the other hand, the court found that the children were well adjusted to the current school and community in Norwich and that that factor weighed in favor of granting father custody. Mother appeals.

Mother first argues that the court erred in awarding father physical and legal rights and responsibilities, and in adjusting the children's schedule so that she ended up with them less than 50% of the time, when the parties had a longstanding agreement to share physical and legal rights and responsibilities and divide the children's time equally. We consider each of these distinct components of the trial court's order—legal rights and responsibilities, physical rights and responsibilities, and the allocation of time between the parents—separately, as they are closely related but also distinct.

The court acknowledged that the parties had been able to share parenting responsibilities successfully for four years. By the time of the hearing, however, the agreement no longer held. When father filed the action to establish his parentage, he requested an order for shared physical and legal rights and responsibilities. In her counterclaim, mother asked for shared legal rights and responsibilities, but sole physical rights and responsibilities. The evidence presented at the hearing showed that the parents were generally, and commendably, cooperating effectively concerning most issues relating to the children, but did not agree concerning medical care and where the children should attend school. Both parents also indicated that they thought the children should stay with the parent who lived by the school they attended during the school week. In his proposed parenting plan, submitted at the court's request after the hearing, father requested primary legal rights and responsibilities, indicated a continuing willingness to share physical rights and responsibilities, and proposed a schedule pursuant to which the children would live with him (and attend school in Norwich) during the week, and with their mother on the weekends. Mother proposed that she be awarded legal and physical rights and responsibilities, and proposed that the children live with her during the week and with father on the weekends.

Given this record the trial court reasonably concluded that the parties did not agree to share legal rights and responsibilities. The core issues dividing the parents implicated legal

---

[1] The court also noted that mother had been in an abusive relationship, but did not elaborate further. This did not appear to factor into the court's decision.

2

rights and responsibilities, so an order that they share would not have worked. Moreover, although both parents initially filed pleadings indicating a willingness to share legal rights and responsibilities, by the end of the proceedings, both parents sought primary legal rights and responsibilities. Likewise, although the record supports mother's argument that the parties were able to effectively share physical rights and responsibilities, and that father was willing to do so even after the hearing, mother specifically requested that she be awarded physical rights and responsibilities. Given this record, the trial court's decision to award both legal and physical rights and responsibilities to one parent or the other was not only within its discretion; it was required. See 15 V.S.A. § 665(a) ("When the parents cannot agree to divide or share parental rights and responsibilities, the court shall award parental rights and responsibilities primarily or solely to one parent."). Had the court imposed a shared arrangement without agreement, it would have been error. See Cabot v. Cabot, 166 Vt. 485, 493 (1997).

As the parties' discussion with the trial court unfolded, it became clear that their disagreement about where the children should attend school included a disagreement about where the children should primarily live during the school week. Both parties recommended a parenting plan that called for the children to live during the school week with one parent, and on weekends with the other—a break from their longstanding equal allocation of parenting time. And while both parties' plans left open the possibility that the parties might agree to more time for the weekend parent in the summer, both expressly rejected a separate schedule for summertime. Given this record, the trial court was well within its discretion in adopting father's parenting plan. The record does not support any suggestion that the parties agreed to continue with an arrangement dividing the children's time equally.

There is no support for mother's contention that the court failed to provide her with sufficient notice that the court intended to alter the parents' existing agreement. Mother relies on Plante v. Plante, 148 Vt. 234 (1987), for the proposition that when the parties have an agreement on custody the court must give the parties notice that it is rejecting that agreement "so that they may make a meaningful evidentiary presentation on this issue." Id. at 236. The situation in this case was unlike that in Plante. At the time of the hearing, there was no agreement between the parties as to legal and physical rights and responsibilities. In addition, there was notice that the issues of legal and physical rights and responsibilities were being decided; that was the entire purpose of the hearing. At the beginning of the hearing, the court explained that it could not impose joint custody absent an agreement of the parties. The court further explained that if the parties could not agree on a shared arrangement, the court would take testimony and then issue an order designating parental rights and responsibilities as well as a parenting plan for the allocation of time. The parties expressed that they could not agree, and the hearing went forward. Again, at the end of the hearing, the court explained that since the parties could not agree, the court would decide which parent should be granted parental rights and responsibilities, with the understanding that the other parent would have an allocation of time with the children. Thus, there was adequate notice that the court was deciding the issue of parental rights and responsibilities and both parties were accorded a chance to present evidence on this issue.

Mother next argues that the court erroneously assumed that it had to award sole legal and physical rights and responsibilities to one parent. Mother points to cases in which this Court has affirmed decisions dividing legal rights and responsibilities. There is no indication in the record here that the court was unaware that it could assign specific decisions to one parent. In fact, at one point the court questioned father on this point, explaining that it could fashion an order that allowed a particular parent the authority to decide certain issues. Moreover, neither parent

3

requested that the decisions encompassed within legal rights and responsibilities be divided even though the form they submitted to the court specifically included that option.

Finally, mother contends that the court abused its discretion in assessing the best-interests factors enumerated in § 665(b). Mother argues that the evidence does not support a finding that the children's adjustment to their current situation supports granting custody to father. Mother also argues that the court failed to consider the importance of her role as primary care provider. "The court has broad discretion in considering the factors and determining the children's best interests." Chase v. Bowen, 2008 VT 12, ¶ 34, 183 Vt. 187. Given the court's unique ability to assess the credibility and weight of evidence, the family division's findings will not be set aside if supported by the evidence, nor its conclusions if supported by the findings. Payrits v. Payrits, 171 Vt. 50, 53 (2000).

On the first point, the court found that the most significant factor was "the quality of the child's adjustment to the child's present housing, school and community and the potential effect of any change." 15 V.S.A. § 665(b)(4). The court found that the children were well adjusted to their current school and living situation, and that this factor weighed in favor of granting custody to father. Mother argues that the children's positive adjustment to their current situation includes the equal time they spend with mother and that this cannot therefore favor granting custody to father. The court did not err in weighing this factor in favor of granting custody to father. While the children spent time with both mother and father, their current school is in father's town and the evidence supported the court's finding that the children were well adjusted there and it was unclear how a change in school might affect them. Thus, it was not error for the court to weigh the children's current positive adjustment to their school and community in favor of granting father physical and legal rights and responsibilities.

In addition, mother contends that the court failed to give weight to her status as primary caregiver. While the court did not address this factor specifically, the court found that on most factors—including this one—the parties were equal. At the hearing, the court questioned both parties on the issue of who was the primary caregiver. Father reported that both parents cared for the children when they were young. Mother stated that it was mostly her. On appeal, mother stresses that evidence showed she was the primary caregiver during the children's early years and the court failed to adequately weigh this factor.[2] It was up to the trial court to decide issues of credibility and the weight to accord evidence, and we will not reweigh the evidence on appeal. See Mullin v. Phelps, 162 Vt. 250, 261 (1994). Both parties testified that they were currently both caring for the children approximately half of the time, and father testified that he participated in their care when they were young. Therefore, the court did not abuse its discretion

---

[2] Citing statutes related to guardianship, mother claims that there is a presumption in favor of granting custody to mothers of children born out of wedlock. See 14 V.S.A. § 2644 (stating that mother of child born out of wedlock is presumed guardian). Mother claims that father had an affirmative burden to prove his relationship with his children and failed to adequately do so and therefore the court should have presumed mother to be the primary caregiver. There are no grounds to support such a presumption. This is not a guardianship case, but a custody matter. Further, all of the evidence—including mother's testimony—indicated that father was involved in the children's lives from birth and that both parties were jointly caring for the children. See In re S.B.L., 150 Vt. 294, 305 (1988) (explaining that when father of child born out of wedlock demonstrates requisite custodial, personal or financial relationship with child, he acquires status as joint custodian, notwithstanding terms of guardianship statute).

4

in failing to weigh this factor in mother's favor.  See <u>Payrits</u>, 171 Vt. at 53 (concluding that court did not err in concluding that both parents served as primary care provider where they spent equal time with the children).

     <u>Affirmed</u>.

                               BY THE COURT:


                               _____

                               Paul L. Reiber, Chief Justice


                               _____

                               John A. Dooley, Associate Justice


                               _____

                               Beth Robinson, Associate Justice