VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      24-AP-032



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

# ENTRY ORDER

SEPTEMBER TERM,   2024

Jacob Wheeler v. Lorianne James\*

}     APPEALED FROM:
}     Superior Court, Windham Unit,
}     Family Division
}     CASE NO. 22-DM-01348
      Trial Judge: Jennifer Barrett

In the above-entitled cause, the Clerk will enter:

Mother appeals from a family division parentage order granting sole legal and physical parental rights and responsibilities to father.  On appeal, mother argues that the evidence does not support the court's findings and the court erred in assessing the children's best-interests.  We affirm.

The court found the following.  The parties have three children: twins born in December 2015 and a younger child born in July 2018.  The parties signed voluntary acknowledgements of paternity for all three children and father has always acted as the children's parent.  Mother also has two older children from a prior relationship.  After the twins were born, mother stayed home with them, and father was the sole financial supporter.  The family moved to Marlboro, Vermont in 2016.  In 2020, mother felt trapped in the home and did not have separate income.  Father struggled to care for all five children when mother left the house and there was frequent conflict between father and mother's oldest child.  Father was experiencing depression.  He later changed his medication and engaged in therapy.  Mother left the residence in 2020 with the parties' children and moved into a safe house, even though there was no evidence of physical abuse. Mother withheld contact between father and the children for four weeks.  She maintained this was due to the facility's strict rules.  She eventually found an apartment.  Father then had contact with the children pursuant to a schedule.

In October 2021, mother moved back into the family home so that mother's older child could attend the high school she desired, and father moved to an apartment.  Mother agreed to pay the mortgage on the home.  At the time of the parentage hearing, mother continued to reside in the family home.  Mother had not made a mortgage payment since February 2023 and father understood that the bank was considering foreclosure.  In May and September 2023, father entered the house to assist the children in retrieving items.  Father observed that the house was in very poor condition with open food, rotting food, trash strewn throughout the house, mouse feces on the floor, broken furniture, sharp objects on the floor, and soiled beds.  Father documented the conditions with photographs.  Father obtained an apartment in Brattleboro that had a room with

bunk beds for the children. Father worked as a carpenter and mother was employed as a guide at a residential rehabilitation center. Father offered to pay for and transport the children to extracurricular activities and the children expressed a desire to engage in sports, but mother did not want the children to engage in activities during her time.

In June 2022, father initiated a parentage action seeking sole legal rights and responsibilities for the children. Following a contested hearing, the court made findings on the children's best interests under 15 V.S.A. § 665(b). The court found that four factors weighed in favor of father. As to each parent's ability to "assure that the child receives adequate food, clothing, medical care, other material needs, and a safe environment," the court found that both parents could provide for the children's needs but the condition of mother's home was concerning and unacceptable. Further, the court expressed concern about mother's attempt to interfere with the children's medical care. The court noted that mother had previously exercised primary responsibility for the children's medical decisions without consulting father and belatedly agreed to counseling for the youngest child. As to each parent's ability to meet the children's present and future developmental needs, the court found that father was passionate about addressing the children's educational needs, had taken proactive steps to work on one child's reading skills, and valued the importance of the recommendations from the school. The court found that mother thought second grade was too early to address concerns about one child's reading, declined to engage with an occupational therapist for another child, and did not involve father in decisionmaking regarding the children. The court found that father was better able to foster a positive relationship between the children and mother and to ensure that the children maintained relationships with important family members, such as paternal grandparents, maternal grandmother, aunts, uncles, and their older half siblings. The court found that mother's status as the primary caregiver weighed in her favor. Based on these findings, the court granted father primary legal and physical parental rights and responsibilities. The court granted mother contact with the children for roughly half the time, with an alternating weekly schedule of Monday afternoon through Friday afternoon, and Tuesday afternoon through Friday afternoon. Mother appeals.

The family division has "broad discretion" in allocating parental rights and responsibilities, and this Court reviews for abuse of that discretion. Barrows v. Easton, 2020 VT 2, ¶ 7, 211 Vt. 354. In assessing parental rights and responsibilities, the family division is guided by the best interests of the child and must consider the statutory factors. See 15 V.S.A. § 665(b) (listing statutory factors).

On appeal, mother first argues that as an unwed mother, she had decisionmaking authority for the children and the court committed reversible error in weighing against mother the past exercise of this authority. See 14 V.S.A. § 2644 ("An unmarried woman who bears a child shall be guardian of such child until another is appointed."). There is no merit to mother's assertion that as an unwed mother she had sole or superior authority over father in making decisions regarding the children's education or healthcare.[1] First, § 2644 pertains to guardianship proceedings and does not have any direct bearing on this parentage action. Second,

---

[1] On appeal, mother appears to argue that father made unilateral decisions regarding the children's healthcare and that the trial court's decision condoned this approach. This framing is different from mother's view below, which was that father did not have any rights related to the children's medical or education needs. There is no indication in the trial court's order that it viewed father as having the authority to make decisions without mother's involvement.

even if § 2644 had any relevance, mother misconstrues the statute. This Court has previously held that a father of a child born out of wedlock who has established the requisite custodial, personal, and financial relationship with a child is entitled to the same status as the father of a child born in wedlock. In re S.B.L., 150 Vt. 294, 306 (1988). This framework is also consistent with the parentage statutes. In this case, father signed a voluntary acknowledgment of parentage for each child and was therefore a recognized parent under Vermont law. 15C V.S.A. § 201(3). Therefore, both parents were entitled to the rights and duties of parentage. Id. § 203.

Mother also contends that the court erred in critiquing mother's judgment regarding medical decisions, particularly mother's preference not to have one child seen by an ophthalmologist and mother's opposition to a counselor chosen by father. Mother contends that the court was essentially blaming mother for opposing father's view of the best medical treatment for the children while failing to fault father for acting without mother's consent. There was no error. As part of its best-interests analysis, the court properly considered each parent's ability to provide the children with adequate medical care. 15 V.S.A. § 665(b)(2). As to this factor, the court did not indicate that father could act without mother's consent, as mother asserts. The court's primary concern was mother's reluctance to involve father in decision-making regarding the children's medical care and her opposition to appointments designed to assess or address the children's needs that were identified by medical or education providers, such as the ophthalmology screening and counseling. This was a proper consideration in assessing this factor.

The court's analysis of the children's best interests was also informed by its findings on factors three, five, and seven—the ability of each parent to meet the children's present and future developmental needs, the ability of each parent to foster a positive relationship with the other parent, and the relationship of the child to other persons who may affect the child. Id. § 665(b)(3), (5), (7). The court found all three factors weighed in father's favor. Mother argues that the court's findings on each are not supported by the evidence.[2] The evidence supports the court's findings. In addition, we note that on appeal, we review the court's findings "in the light most favorable to the prevailing party below, disregarding the effect of any modifying evidence, and we will not set aside the findings unless they are clearly erroneous." Cloutier v. Blowers, 172 Vt. 450, 452 (2001) (quotation omitted).

As to their developmental needs, the court found that father was passionate about the children's educational needs, took steps to work on reading with one of the twins, and followed through on recommendations from an occupational therapist. The court found that mother did not consider father's input regarding the children's medical treatment, did not believe that the noninvasive eye exam was necessary, and preferred to wait to address concerns about one child's reading. She also declined to have the evaluation by the occupational therapist and excluded father from the decisionmaking on this issue. Mother contends that these findings are in error because the court ignored evidence that she was better suited to meet the children's developmental needs, as shown by her work at a Waldorf school and as an assistant teacher at a different school. As the trier of fact, it was up to the trial court to assess the credibility of witnesses and to determine the weight and persuasive effect to apply to the evidence. Payrits v. Payrits, 171 Vt. 50, 54 (2000). Here, the court weighed all the evidence provided, including

---

[2] There is no indication in the record that the court's findings were the result of implicit bias against mother as she asserts in her appellate brief. The court identified each of the statutory factors and made findings on each based on the evidence presented by the parties.

3

mother's prior work at the schools. The court's assessment is supported, entitled to deference under the law, and we will not reweigh the evidence on appeal.

As to the ability of each parent to foster a positive relationship with the other, the court found that mother did not treat father "as an equal co-parent and [did] not meaningfully consider[] his suggestions and input." The court found that mother did not demonstrate "the ability to foster a positive relationship with father and to foster continuing ongoing physical contact." Further, the court found that mother withheld contact for a month after the separation and did not allow the children to contact father while in her care. Conversely, the court found that father fostered a positive relationship between the children and mother and did not speak negatively about her in front of the children.

Mother argues that the court erroneously found that she was reluctant to allow father additional time and unilaterally created the contact schedule during the separation period. There was sufficient evidence at trial to support these findings. As to the schedule, father testified that mother established the schedule during the separation period and there were ways he sought to change the contact schedule regarding pick-ups and drop-offs because he felt the transitions were difficult for the children. He also sought more time during the middle of the week. Father testified that mother declined these requests and told him he was greedy for seeking more time. In an email communication, mother told father that she had informed the school that father was not permitted to sign the children up for extracurriculars or to pick them up without her permission. Father also testified that mother treated him disrespectfully in front of the children and did not allow him to communicate with the children when they were with mother. As to the lack of contact following the separation, mother herself testified that she did not allow father to have in-person contact with the children for four weeks after she left the home.[3] Therefore, the evidence supports the court's findings regarding factor five.

Finally, the court made findings regarding the children's relationships with other family members. The court found that the children have relationships with their paternal grandparents. They have weekly FaceTime calls with their grandfather and see him two or three times a year. The children also see their paternal aunt, uncle, and cousin, with whom they have a close bond. The children have a close bond with their maternal grandmother as well and visit with her while with father because mother is estranged from her. In addition, the court found that the children have a close relationship with their older half-sister and that father is working to rebuild their relationship with their half-brother. The court found that father ensures that the children maintain these relationships. The court also found that mother supports the relationship between the half-sister and the children but that overall, the factor weighed in father's favor.

---

[3] Mother contends that the court failed to take into account that she allowed some FaceTime and telephone contact with father during this period following the separation and that the rules of the safe house were the reason for the lack of in-person contact. She argues that the court used against her the fact that she sought shelter at the safe house. There was no error. The court acknowledged mother's reason for the lack of in-person contact, but given the lack of any allegation of physical abuse, it drew no conclusion from mother's choice to go to the safe house with the children. Moreover, the lack of in-person contact during this period was one part of the court's overall finding that mother did not foster a positive relationship between the children and father.

4

Mother argues that the children's relationship with their half-brother did not support the conclusion that factor seven weighed in father's favor. She argues that this child left her home due to the child's abusive and violent conduct and it was improper for the court to weigh this against her. There was no error. The court properly consider the children's relationships with other family members and how each parent could facilitate those relationships. The court did not punish mother for the state of her relationship with her older son. Father's ability to foster a relationship with this half-sibling was a small part of the court's assessment of this factor in father's favor.

Finally, mother argues that the court should have given greater consideration to the fact that she was the children's primary caregiver and the effect that awarding primary parental rights and responsibilities to father would have on them. This Court has "continually declined to adopt a rule that the primary custodian will be awarded custody as long as the parent is fit." Payrits, 171 Vt. at 54 (quotation omitted). The weight afforded to the primary-caregiver relationship is "based on the likely effect of a change of custodian on the child." Id. at 55. Although the court did not specifically address the impact of awarding legal rights and responsibilities to father would have on the children, its overall findings demonstrate that the court considered mother's role as primary caregiver and found that awarding rights to father was in the children's best interests. The court recognized mother's role as primary caregiver, but it also found that father was involved in the children's daily lives, education, and health care and that both parents had strong, bonded relationships with the children. Since the parties' separation, the children had been spending almost equal amounts of time with each parent. The court's contact schedule continued to provide a roughly even split of time between mother and father. Therefore, this was not a situation where the grant of parental rights and responsibilities to father resulted in a large change to the children's situation. The court provided a sufficient explanation for its decision to award sole legal and physical rights and responsibilities to father with significant contact for mother.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Harold E. Eaton, Jr., Associate Justice

Nancy J. Waples, Associate Justice

5