*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-097

JULY TERM, 2014

| | |
|---|---|
| In re K.P., S.P. and A.P., Juveniles | APPEALED FROM: |
| | |
| | Superior Court, Windham Unit, |
| . | Family Division |
| | |
| | DOCKET NO. 103/4/5-9-12 Wmjv |
| | |
| | Trial Judge: Katherine A. Hayes |

In the above-entitled cause, the Clerk will enter:

Mother appeals from the termination of her parental rights in K.P., S.P., and A.P. She argues that the court applied the wrong standard of proof, and that it erred in concluding that she could not parent the children within a reasonable period of time. We affirm.

K.P. was born in September 2009; S.P. in February 2011; and A.P. in June 2012. The Department for Children and Families (DCF) first became involved with the family in November 2011 following an incident where both parents were severely intoxicated and unable to care for the children. In June 2012, DCF learned that mother lacked housing and necessary transportation, she was not obtaining appropriate prenatal care, and she was using marijuana. In late September 2012, while these reports were being assessed, S.P., then one-and-a-half years old, was found wandering alone along a state road. Mother had left S.P. with father near the Connecticut River, but father subsequently passed out drunk under a bridge. S.P. wandered away and was picked up by a passerby who took him to the police station. The children were taken into emergency DCF custody that day.

In December 2012, parents stipulated that the children were in need of care or supervision because they were without proper parental care. Parents agreed that the family was homeless and had been staying in a motel room for the preceding month. On the day S.P. was found by the roadside, the family was moving out of the motel. Their room was in terrible condition, with a filthy carpet, urine-soaked mattress, broken refrigerator and microwave door, and a clogged sink. The motel refused to allow the family to move into another room and the family had no arrangements for alternate housing. As indicated above, mother had left S.P. with father, who passed out under a bridge, and S.P. was found walking on the road.

The initial disposition plan called for concurrent goals of reunification with mother or adoption. The case plan required, among other things, that mother actively engage in services to address her mental health needs; refrain from using illegal substances; and complete a substance abuse assessment and follow all recommendations. The case plan goals were to be achieved by September 2013.

In mid-September 2013, DCF moved to terminate parents' rights. Following a trial, the court concluded that parents had stagnated in their ability to parent, and that termination of their rights was in the children's best interests.[*] The court found that mother failed to meet key goals of the case plan. She had not actively engaged in services to address her mental health needs or demonstrated that she understood the impact her mental health had on her ability to care for the children. Without such counseling, the court found it likely that mother would continue to make ill-advised choices about partners, which would have a negative impact on the children if they were in her care. The court recounted that mother had entered into a destructive relationship with a new partner after the children were taken into custody. Had the children been in mother's care between May and September 2013, they would have been exposed to the domestic violence and alcohol abuse that were frequent events within this relationship. The court also noted that it had taken mother many months to obtain her required substance abuse assessment and many more months to begin recommended treatment. She had engaged in at least two separate criminal acts while drinking before she began her treatment. She did not stop using illegal substances until the termination petitions were filed. Mother had not obtained stable, appropriate housing large enough to accommodate all of the children. She had twice declined to participate in a residential program that would have enabled her to address all of the case plan goals at once, including her housing needs. The court concluded that mother had stalled in her ability to meet her children's physical, mental, and developmental needs consistently and she failed to make progress toward significant and necessary case-plan goals.

Turning to the statutory best-interest factors, the court found the evidence with respect to mother much more complicated than the evidence as to father. The children had had regular positive contact with mother several times a week; they had a close relationship with their maternal grandmother. The children were also close to their foster parents and close to one another. The children lived together in the same foster home and they were well-adjusted to their current situation. Ultimately, the court explained that its decision turned on mother's inability to parent the children within a reasonable period of time. Mother admitted that she could not resume her parenting duties at present, and that it would be a period of months before she could hope to do so if given the opportunity. The children had spent much, if not most, of their lives with their foster parents. The case plan had set clear goals and contained a reasonable deadline for compliance. Mother failed to meet this deadline. The court found that the children deserved a stable, secure, and safe home now, and mother could not provide such a home for them. While mother had positive loving relationships with the children, she was simply not ready to be their full-time parent. The court reiterated that the children's need for permanency, clarity, and continuity outweighed mother's positive relationship with them. The court thus concluded that termination of mother's rights was in the children's best interests. This appeal followed.

Mother first argues that the court employed an incorrectly low standard of proof in assessing whether termination of her rights was in the children's best interests. She points to the court's statement that, with respect to mother, the children's best interests were "difficult to discern." Mother maintains that evidence that renders resolution of an issue "difficult to discern" is not "clear and convincing evidence" with respect to that issue.

We find no error. It is evident that the court applied the appropriate standard of proof. See In re A.D., 143 Vt. 432, 435 (1983) ("The clear and convincing evidence test must be used

---

[*] Father has not appealed from this order.

2

in cases involving the permanent termination of parental rights."). It expressly stated that the State must prove its case by clear and convincing evidence. It made its findings "based on the clear and convincing evidence presented at the hearing." The language cited by mother was used by the court to draw a contrast between the evidence as to father, which the court found unequivocal and without any question whatsoever, and the evidence as to mother, which was more complex and nuanced. The court was not suggesting that it could not reach a decision based on clear and convincing evidence. Mother's first argument is without merit.

Mother next asserts that the court erred, legally and factually, in concluding that she could not parent the children within a reasonable period of time. According to mother, the court erroneously concluded that a parent's inability to resume parenting within a reasonable period of time mandates termination where, as here, the parent-child bonds clearly are strong and the parent is playing a constructive role in the children's lives. Mother argues that a loving parental bond should override the other factors in this case. Mother also contends that the court erred in stating that, "[a]s the guardians ad litem and other witnesses at the hearing said, the children deserve a 'forever home' now. They deserve to have a home, now, that will be there for the rest of their lives and will be stable, secure, and safe." Mother notes that the GALs were not witnesses, and thus, to the extent that the court relied on their statements as evidence, it erred. Mother contends that the testimony from K.P.'s therapist and the DCF supervisor does not support the court's finding that the children needed permanency.

These arguments are without merit. As we have often explained, to determine the best interests of a child, the court must consider four statutory factors. 33 V.S.A. § 5114. The most important factor is the likelihood that the natural parent will be able to resume his or her parental duties within a reasonable period of time. In re B.M., 165 Vt. 331, 336 (1996). As long as the court applied the proper standard, we will not disturb its findings on appeal unless they are clearly erroneous; we will affirm its conclusions if they are supported by the findings. In re G.S., 153 Vt. 651, 652 (1990) (mem.).

Mother's first argument is essentially a challenge to the court's assessment of the weight of the evidence. As set forth above, the court concluded that notwithstanding mother's bond with the children, the statutory best-interest factors showed that termination was in the children's best interests. While mother disagrees with the court's conclusion, she has not demonstrated any error. See In re S.B., 174 Vt. 427, 429 (2002) (mem.) ("Our role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion in terminating mother's parental rights"); In re M.B., 162 Vt. 229, 238 (1994) (recognizing that "[p]ublic policy . . . does not dictate that the parent-child bond be maintained regardless of the cost to the child").

The court similarly did not err in concluding that the children needed permanency and that they could not continue to wait for mother to be able to parent them. It does not appear that the court was relying on the testimony of the GALs or other witnesses in making the observation cited above; rather, it appeared to be agreeing with the notion, based on its own findings, that the children needed stability and permanency now. As the court found, the children were very young when they were taken into custody and they had been in custody for much, if not most, of their lives. Mother had been given a year in which to meet the case plan goals, and she failed to do so. She remained incapable of parenting the children. It was reasonable for the court to conclude, based on "its own common sense and experience" that these young children needed permanency and stability now. Payrits v. Payrits, 171 Vt. 50, 53 (2000) (recognizing that, in

3

determining the best interests of children, "the court may draw upon its own common sense and experience in reaching a reasoned judgment"); see also In re W.L., 2009 VT 41, ¶ 16, 185 Vt. 641 (mem.) (affirming termination of parental rights in part because the "the need for stability and permanence was particularly pronounced given [child's] young age"). In any event, as the State points out, the testimony of K.P.'s therapist and the DCF supervisor supports the court's conclusion. Although K.P.'s therapist did testify that continuing the status quo for another year would not be bad for K.P., he also testified that K.P. was increasingly anxious about where she would live in the future and it was important for K.P. to have stability, predictability, and permanency in her life. As to the DCF supervisor, he testified that children generally, and these children, specifically, needed stability and permanency. He had supervised this case since September 2012, when the children first came into custody, and was very familiar with the progress of this case. The fact that he stopped supervising this case in October 2013, after the termination petition was filed, does not disqualify him from expressing his opinion as to the children's need for permanency. It does not undermine the probative value of his testimony that, after sixteen months of being in DCF custody, these children needed "to know where their home is." Any reliance on the opinion of the GALs is harmless.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice


_____
Geoffrey W. Crawford, Associate Justice

4